(Decided 22nd June, 1876.)

THE ST. MARY'S INDUSTRIAL SCHOOL FOR BOYS *vs.* GEORGE S. BROWN, WILLIAM G. HARRISON and others. THE MARYLAND INDUSTRIAL SCHOOL FOR GIRLS *vs.* SAME. THE ST. VINCENT'S INFANT ASYLUM OF THE CITY OF BALTIMORE *vs.* SAME. THE MARYLAND INSTITUTE FOR THE PROMOTION OF THE MECHANIC ARTS *vs.* SAME.

*Equity Jurisdiction—Ultra Vires—Municipal Appropriations—Charitable Institutions—Act of 1874, ch. 288—Act of 1870, ch. 391—Municipal Powers—Power of Municipal taxation—Power of the City of Baltimore to Provide for certain classes of its Population.*

Tax-payers of a municipal corporation may invoke the restraining powers of a Court of Equity, and the Court will entertain jurisdiction of their suit against such corporation and its officers, whenever the latter are shown to be acting *ultra vires*, or are assuming or exercising a power over the property of the citizen, or over corporate property or funds, which the law does not confer upon them, and where such unauthorized acts may affect injuriously the rights and property of the parties complaining.

St. Mary's Industrial School for Boys *vs.* Brown, *et al.*

The Mayor and City Council of Baltimore has no authority to make appropriations, by the exercise of the taxing power, to sustain or aid institutions, however benevolent and charitable in their character, which do not owe their creation to the municipal power conferred on the City of Baltimore, and were not created for the city by the Legislature of the State, as instruments of municipal administration, but which are separate and distinct corporations, composed of private individuals and managed and controlled by officers and agents of their own, and over which the city has no supervision or control, and for the management of which there is no accountability to the city whatever.

The fact that the Governor of the State and the Mayor of the City of Baltimore each appoints, every two years, three persons to represent the State and city in the Board of trustees of the St. Mary's Industrial School for Boys under the amendment of its charter, by the Act of 1874, ch. 288, in no manner changes the nature of the institution, nor makes it a municipal agency.

The fact that the Governor of the State is empowered (Act of 1870, ch. 391,) to appoint ten, and the Mayor of the City of Baltimore five of the directors of the Maryland Industrial School for Girls, the Board being composed of thirty, does not put the State nor the city in such relation to the corporation as to make it either a public, State or municipal institution.

The mere fact that the City of Baltimore may own the ground upon which the building is erected, or that the city, in its deed to the institution, has reserved certain privileges in the use of the hall, as part of the consideration for the grant, cannot constitute The Maryland Institute for the Promotion of the Mechanic Arts, a municipal agency.

Municipal powers are delegated, and depend upon legislative charter or grant; and the corporate authorities can exercise no power which is not, in express terms, or by fair and reasonable implication, conferred upon the corporation.

Municipal corporations can levy no taxes, general or special, upon the inhabitants or their property, unless the power be plainly and unmistakably conferred. The authority must be given either in express words, or by necessary implication, and it cannot be collected by doubtful inferences from other powers, or powers relating to other subjects, nor deduced from any consideration of convenience or advantage.

While the City of Baltimore has ample power delegated to it to provide for the foundlings, the insane, the indigent infirm and helpless, and for the correction of the vicious and vagrant portions of its population, such provision when made, must be under the control, and subject to the supervision, of municipal authority.

APPEALS from the Circuit Court of Baltimore City.

On the bill of complaint of the appellees, the Circuit Court of Baltimore City on the 28th of June, 1875, passed an order directing a preliminary injunction to be issued restraining the Mayor and City Council of Baltimore from paying, and certain corporations and associations (including the appellants) from demanding certain sums of money appropriated for the benefit of the latter by the city ordinance, approved on the 12th of June, 1875, making general appropriations for that year. The injunction was issued as ordered. Nearly all of the institutions which were made defendants appeared and answered, as also the Mayor and City Council of Baltimore. After the coming in of the answers, on the motion to dissolve the injunction, the Court (PINKNEY, J.) on the 18th of February, 1876, ordered that the injunction previously issued, except as to three of the defendants, as to which it had been dissolved, be continued until the final hearing or further order. From this order these appeals were taken.

The causes were argued before BARTOL, C. J., BOWIE, GRASON and ALVEY, J.

*Charles J. Bonaparte* and *William M. Merrick*, for the St. Mary's Industrial School for Boys.

The bill charges that the respondent institutions are not public agencies, but are private corporations managed for private ends. If these allegations could be sustained as to this appellant, it would be needless to consider whether the city has been authorized to use the taxing power in its aid, for the State cannot itself tax for any other than a public purpose, and consequently cannot delegate such a power to the city.

A public agency is one which discharges some function which, by the custom of communities governed by the common law, has always been matter of public concern;

in other words, if the State could itself establish and support an institution similar to this appellant with the proceeds of taxation, it may use the same funds to aid this appellant and authorize the city to do likewise. *Loan Association vs. Topeka*, 20 *Wall.*, 653 ; *St. Joseph's Township vs. Rogers*, 16 *Wall.*, 644 ; *Railroad Co. vs. County of Otoe*, 16 *Wall.*, 667 ; *Olcott vs. The Supervisors*, 16 *Wall.*, 678 ; *O. C. & F. R. R. R. Co. vs. County of Plymouth*, 14 *Gray*, 155.

If this definition be admitted as a test, the public character of this appellant is undoubted, for no one will question the right of the State to maintain a house of reformation. *Roth vs. The House of Refuge*, 31 *Md.*, 329 ; *Boyle vs. Same*, 31 *Md.*, 329 ; *Ex parte Crouse*, 4 *Whart.*, 11 ; *McKim vs. Odom*, 3 *Bland*, 407, 417.

If, however, some other test be sought, none can be found at all supported by authority, which will not make this respondent a public agency. *Sharpless vs. The Mayor, &c.*, 21 *Penn. R.*, 147 ; *Booth vs. The Town of Woodbury*, 32 *Conn.*, 118 ; *Broadhead vs. The City of Milwaukie*, 19 *Wis.*, 624 ; *Spear vs. Sch. Dir., &c., of Blairsville*, 50 *Pa.*, 150 ; *Schenley vs. The City of Allegheny*, 1 *Casey*, 130 ; *Cooley on Const. Limitations*, 67, 89.

If the State has authority itself to aid this appellant by taxation, there can be no doubt of its right to delegate that authority to the city. *In re Oliver*, 17 *Wis.*, 681, *and cases there cited ; Mayor and City Council vs. The State*, 15 *Md.*, 376, 398.

We are then brought to what the Court below calls "the real question in the case," *i. e.*, whether the State has authorized the city corporation to use its taxing powers in aid of this appellant? The question whether this appellant is a public or a private *corporation* is wholly immaterial. A private corporation, as a private individual, may be the recipient of the proceeds of taxation, provided that the *use* or *purpose* for which such proceeds are expended is

a public one.   *Spear vs. Sch. Dir., &c., of Blairsville,* 50 *Penn.,* 150 ;   *The Regents, &c., vs. Williams,* 9 *G. & J.,* 365, 401 ;   *Visitors, &c., of St. John's College vs. State,* 15 *Md.,* 330, 375 ;   *Mayor and City Council of Baltimore vs. State,* 15 *Md.,* 376, 462.

If the use for which these funds were to be expended by the appellant were not a public one, the State could not itself tax in its aid.   *Loan Association vs. Topeka,* 20 *Wall.,* 653.   And of course could not delegate a power which it did not possess; so that, in order that the authority of the city may be matter of argument at all, it must be assumed that the use to which these funds will finally be put is a public one, and if *it* is public the private character of the corporation which will serve as the channel of its expenditure, cannot invalidate the appropriation.

To call the appropriation to this appellant "a gratuity, a bounty or a gift," is inaccurate, or, at least, misleading ; the sum given would be expended neither for its benefit as a corporation nor for the benefit of its members individually, but for the benefit of the community, and in discharging duties which the municipal corporation must fulfil either directly or indirectly.   In short, it is a fund entrusted to the appellant to be expended in the way contemplated by its charter.

The question of the city's authority really involves two considerations, *i. e.,* whether the city has power to expend the proceeds of taxation in order to "train to virtue, industry and learning orphans and other destitute boys," and especially such as have been legally committed to a reformatory, and whether the city has power to make the appellant its agent in expending its funds for such purposes?

The city can claim neither power unless it has been either expressly or by fair implication conferred upon it by the State, but it is submitted that each is sustained by both express and implied authority.   The city is author-

ized "to pass ordinances . . . . . . for promoting the great interests and insuring the good government of the city." *Code Public Local Laws, Art.* 4, *sec.* 32.

This is the equivalent, at least of a "general welfare" clause in its charter, and confers upon it all the usual powers of municipal corporations. 1 *Dillon on Mun. Cor.*, *secs.* 58, 59, 334; *Shafer vs. Mumma*, 17 *Md.*, 331. And the care of paupers and reformation of youthful offenders have always been matters of municipal concern. *Spear vs. Sch. Dir., &c., of Blairsville*, 50 *Penn.*, 150.

But the matter is put beyond all doubt by the authority conferred in the Code of Public Local Laws, Art. 4, sec. 31, "to erect or establish houses of correction." There can be no question that this appellant discharges the duties of a "house of correction," and if this could be disputed, the city has power under the Code of Public Local Laws, Art. 4, secs. 907, *et seq.*, to provide for the care of the very persons which the appellant is intended to receive.

The city corporation having authority to expend the proceeds of taxation to support and reform youthful vagrants under the above Acts, is also empowered to use whatever agency may seem proper to it to conduct the expenditure. *Cooley on Const. Lim.*, 63, 64.

The Acts quoted in the answers which authorize the city to name a portion of the trustees of this appellant, confer by the clearest and fairest implication, authority to contribute to its support. Why otherwise should the city name these trustees? Were they not intended to supervise the expenditure of the appropriation from the city? *Curtis' Adm'rs vs. Whipple*, 24 *Wis.*, 350, 353.

*Edward Otis Hinkley*, for the Maryland Industrial School for Girls.

The appropriations by the City of Baltimore to this appellant are lawfully made, because by virtue of the Act of Assembly of 1870, ch. 391, it became a proper part of

the government of the city itself, five directors on the part of the city, ten on the part of the State, and fifteen on the part of the members constituting the management.

Section 7 of Article 11 of the State Constitution, prohibits the City of Baltimore from *lending its credit* to corporations, &c., but it does not prevent appropriations to such as perform uses properly of a public nature, whether individuals or corporations.

There are two *criteria* of the appropriations, first, and principally, *the uses,* whether public in their nature, and such as concern the whole city and all its inhabitants; and secondly, the character of the *agency,* which the city may choose for the execution thereof. If *the uses* be purely public and the agency properly controllable—no danger can arise to the body politic—the appropriation is *infra vires.*

The real protection which the city has as to the proper disposition of its appropriation to this appellant, is the presence and control of the directors on the part of both city and State, whose duty is to protect the people and report, and by proper proceedings prevent abuse, misuse or diversion of funds or powers. Here the *uses* are purely public, and the organization is *controlled* by directors on the part of the city and State. The very fact of the enactment of a law by the State for the appointment of directors by city and State, creates the body an agency of a governmental nature. This agency then is to the extent of the directorship under the appointment of the government, distinctly and unequivocally a public agency—the directors are public agents—public officers. The only question then that can arise, is whether the addition of an equal number of directors elected by the members, vitiates in any manner. The answer is found in the Act of the Legislature itself. An examination of it shows that it does not in the case of this appellant.

*Michael A. Mullin*, for the St. Vincent's Infant Asylum of the City of Baltimore.

The object of both appropriation and tax, in respect of this appellant is to feed, clothe and educate the helpless orphan children of the community, including the unfortunate class known as "foundlings." This is an object universally recognized as a charity, and one for which taxes have with the common approval of mankind, customarily and by long usage been levied. "All charities are in some sense public." *Fox vs. Phila.*, 64 *Pa. St. R.*, 182. "Taxes may be levied and collected for charitable purposes." *Curtis vs. Whipple*, 24 *Wis.*, 355 ; *Booth vs. Town of Woodberry*, 32 *Conn.*, 128.

Such a tax would be legal whether from a duty in the community to provide for those who cannot provide for themselves, or because, although not for the support of government, it would be one imposed with a political view for the good government and benefit of the community, (*Waters vs. The State*, 1 *Gill*, 302,) inasmuch as it would tend to a decrease of pauperism and crime, (particularly infanticide,) and to an increase in the probity and intelligence of those who must hereafter be a portion of the citizens of the State.

If a public object is to be accomplished, and it can be effected best and with least expense by the agency of an individual or a private corporation, what principle of right or dictate of policy forbids the public not to avail itself of such agency. *Sharpless vs. Philadelphia*, 21 *Penn.*, 169, &c.

"It is the thing done or sought to be accomplished which must determine the question of the power of the Mayor and City Council to pass the ordinance." *Gill vs. Mayor*, *&c.*, 31 *Md.*, 387. "The legality of laying a tax * * * * depends on the *object*, the *motive* of the corporation." *Mayor, &c., vs. Hughes*, 1 *G. & J.*, 480.

The legislative and judicial history of Maryland has settled, so far as this State is concerned, that private cor-

porations may be used to accomplish public objects. For
works of public improvement, the Baltimore and Ohio
Railroad, the Chesapeake and Ohio Canal Company and
other private corporations, have been used as the agencies
of the State; for the purposes of education, St. John's and
Washington Colleges and various private schools and
academies; and for the purposes of charity, many private
asylums and institutions, some of which are defendants in
this action, have been the means through which the State has
been accustomed to reach the objects proposed. Through
all these agencies large sums of money raised by taxation
have from the origin of the government customarily been
expended, and although the rights and powers of such
corporations have been repeatedly investigated by the
Courts with the aid of the most learned counsel in the
State, a doubt as to the power of the State to expend
money through these agencies has never been suggested.
That such powers should have been exercised without
being questioned for such a long period of time ought to
be deemed almost conclusive evidence of their being
possessed by the Legislature. *State vs. Mayhew,* 2 *Gill,*
497; *Burgess vs. Pue,* 2 *Gill,* 19; *Mayor, &c., vs. State,*
15 *Md.,* 461.

By Art. 4, sec. 31, of the Code of Public Local Laws,
the Mayor and City Council of Baltimore "may erect or
establish houses of correction, hospitals or pest houses."
What is an hospital? "Hospital—a house for the reception
of insane persons, * * * *foundlings,* &c., who are
supported by public or private charity. A building appro-
priated for the reception of sick, infirm and helpless
paupers."

The City may thus establish hospitals (note the plural)
to an indefinite number, and the term "hospitals" covers
institutions similar to St. Vincent's Infant Asylum. The
City having thus the power of erecting a similar institu-
tion, the question remains whether if she be unable or

St. Mary's Industrial School for Boys *vs.* Brown, *et al.*

unwilling to do so, she may avail herself of the assistance of this corporation to effect the same object.

The City Charter, sec. 33, enacts: "The Mayor and City Council shall have power to pass all ordinances necessary to give effect and operation to all the powers vested in the corporation of the City of Baltimore." In *Harrison vs. Mayor and City Council of Baltimore*, 1 *Gill*, 264, 276, the Court of Appeals held that the power to pass all laws and ordinances necessary to preserve the health of the City, clothed the Mayor, &c., of Baltimore "with all the legislative powers which the General Assembly could have exerted. To their sound discretion was committed the selection of the means and manner (contributory to the end) of exercising the powers, which they might deem requisite to the accomplishment of the objects of which they were made the guardians."

It is impossible to conceive any essential difference between the power "to pass all laws and ordinances necessary" cited in that case, and the power in sec. 33, "to pass all ordinances necessary." If there be no essential difference between the powers so conferred, it follows that sec. 33, clothes the Mayor and City Council with all the legislative power the General Assembly could itself exert to carry into effect the corporate powers of said City, among which is the power to erect and establish hospitals, (sec. 31.) And if the General Assembly could, as asserted by Judge BLACK, in *Sharpless vs. Philadelphia*, above cited, and as the Court below practically concedes, avail itself of the agency of a private corporation to effect a public object, it logically follows that the Mayor and City Council would do likewise. The selection of the means and manner (contributory to the end) being committed to their sound discretion, if they were unable or unwilling to erect and establish an hospital for the foundlings for whom it was their power and duty to provide, they were at liberty to avail themselves of this institution to effect their object.

If the means employed *may* accomplish the object or contribute in any degree to its accomplishment, the Court should not interfere. *Mayor, &c. vs. Chase,* 2 *G. & J.,* 376.

*John M. Carter,* for the Maryland Institute for the Promotion of the Mechanic Arts.

This appellant is a well recognized adjunct to the public school system of the State, and as such, constitutes one of the means of education, for·the expense of which, the Mayor and City Council are authorized to levy and collect taxes under the Act of Assembly of 1872, ch. 377, sub-ch. 16, sec. 4. The 43rd Article of the Bill of Rights, directs the Legislature to encourage the extension of a judicious system of general education and the promotion of the arts and sciences.

The 8th Article of the Constitution makes it mandatory upon the Legislature to pass laws for the establishment of a thorough and efficient system of free public schools, and for their maintenance by taxation.

The Act of Assembly of 1872, ch. 377, delegates this power to the Mayor and City Council so far as the City of Baltimore is concerned, and especially authorizes the levy and collection of "such amount of taxes as may be necessary to defray all expenses incurred for educational purposes by the Mayor and City Council."

Thus, to the municipal corporation, is delegated the power to legislate upon the subject of an educational system for the City, and where such power is delegated, every intendment and presumption ought to be made in favor of its acts in the premises. *Mayor, &c. of Baltimore vs. Clunet,* 23 *Md.,* 467.

The language of the 4th section of the Act of 1872, ch. 377, is broad and comprehensive. The City is authorized to levy and collect taxes to defray *all* expenses incurred for educational purposes by the Mayor and City Council.

Certainly then it is legitimate for the Mayor and City Council to levy and collect taxes for expenses incurred in this behalf by themselves directly, if they can do so for expenses incurred by the Commissioners. Some of the respondents below provide for the education of different classes of pupils than those who attend upon the schools organized and controlled by the School Commissioners, as for instance, the Institutions for the Blind and Deaf and Dumb. In the case of this appellant the course of instruction is different, and young mechanics, who have no opportunity of attending upon the daily sessions of the public schools, and where, even if they could, the course of instruction is not provided for them, are taught the theoretical branches of all those trades in which a knowledge of drawing and designing is essential. Hence the City avails itself of these agencies outside of the regular schools, to provide for the instruction of *different classes and in different branches of education.* And the wisdom of such a course is apparent. Instead of establishing at great expense schools for these specific purposes, the City avails itself of agencies already established by private enterprise.

The appellant is, in the conduct of its affairs, under the supervision of the State and City authorities, and is, therefore, such a public and municipal agency as entitles it to the public aid. By the Act of 1868, ch. 198, sec. 9, the Institute is required to report annually to the State Treasurer—just such an Act as the authorities agree, constitutes a recognition of the public agency or character of the corporation. If the State exercises the slightest act of supervision over a corporation, it makes its agency public. *Curtis' Adm'r vs. Whipple, et al.,* 24 *Wisconsin,* 355.

The City actually owns and holds the title to the property used by the Institute. The building was built in part with the City's money, under the immediate supervi-

sion of the City's officers. The ground floor is used and occupied by the City as a market house; and the City reserves the right to use the whole whenever desired.

The entire building is open to the public at all times, subject only to such restrictions as the board of directors may prescribe, and the Institute's *use* of the building is at best a qualified one. *Ordinance of the City of Baltimore, No.* 43, *approved June* 6*th,* 1850.

*S. Teackle Wallis* and *Fred. W. Brune,* for the appellees.

Assuming for the purposes of the argument in its principal aspect, that the General Assembly could have endowed the municipal authorities of Baltimore with ample power to make the appropriations in controversy, if it had seen fit to do so, the question is whether it has done so in fact.

Has the State authorized the City to burden the taxpayers with a levy for the purpose of supporting or encouraging the institutions whose claims are here set up?

The solicitors for the appellees will assume the law to be well established, that municipal corporations have no inherent right of legislation, and can exercise no powers which are not, in express terms or by fair implication, conferred upon them. These powers must be construed as confined in their exercise to the territorial limits of the municipality, and are not to be extended beyond the proper province of local self-government. Where they are not granted by express language, or fair or necessary implication, they must be either incident to the powers expressly granted, or essential—not simply convenient, but indispensable—to the objects and purposes of the corporation. When the power in dispute is that of taxation, it must especially be held not to exist, unless plainly and unmistakably conferred, and it cannot be collected by doubtful inferences from other powers, or powers relating to other subjects, nor can it be deduced from any con-

sideration of convenience or advantage. The rule accepted by all the authorities is, that all powers to tax must be construed with strictness. *Minturn vs. Larue*, 23 *Howard*, 435, 6; *Thompson vs. Lee County*, 3 *Wallace*, 327, 330; *Thomas vs Richmond*, 12 *Wallace*, 349; *Booth vs. Woodberry*, 32 *Conn* , 124; *Spaulding vs. Lowell*, 23 *Pick.*, 71, 74; 2 *Dillon's Circuit Court Cases*, 354, 359, 360; *Cooley's Constit. Limit.*, (*Ed.* 1874,) 211 *to* 213; *Sedgwick on Stat. and Constit. Law*, (2 *Edit* ,) 397; 1 *Dillon on Municip. Corp.*, (*Ed.* 1873,) *sec* 55; 2 *Dillon on Municip. Corp.*, *sec.* 605; *Cooley on Taxation*, 209, 210; *Mayor, &c. vs. Clunet*, 23 *Md.*, 467; *Frederick vs. Groshon*, 30 *Md.*, 437; *Gill vs. Mayor, &c.*, 31 *Md.*, 395; *Mayor of Cumberland vs. Magruder*, 34 *Md.*, 386.

The appellants all claim to be public agencies: the St. Mary's Industrial School as a reformatory institution for juvenile offenders; the St. Vincent's Orphan Asylum as a school and infant asylum, the Maryland Industrial School as the female House of Refuge of the State, and the Maryland Institute as an agency of public education.

No doubt is suggested or entertained by any one as to their usefulness and excellence in their several departments, whatever those may be, nor as to the benevolent and praiseworthy purposes which they labor to promote. The question raised is, not whether they deserve support and praise, but whether the municipal government of Baltimore has the right to tax the people to support them. It is a question of power and nothing else.

The City Council, in the ordinance in question, have not undertaken to classify the appellants, as they describe themselves. The ordinance assumes to provide for them as "City Poor" and not otherwise. It does not profess to derive the power which it assumes for their benefit, from any other source than that of pauperism. It does not assert, in their behalf, the special powers which they invoke, nor does it act under them. It does not deal with

them as houses of correction, hospitals or schools. Now, while it is very clear that if a municipal corporation assumes to exercise a power, without stating the particular basis of such exercise, the Courts will refer the same to any basis of authority, sufficient to support it, which the corporation may possess; yet if the act is rested, in terms, by the corporation, upon a basis which will not support it, the act must be held void. This proposition is sustained by two express opinions of this Court, and is adopted by the elementary writers as clear law. *Mayor vs. Moore,* 6 *Harr. & Johns.,* 380–381; *Method. Church vs. Mayor, &c.,* 6 *Gill,* 399 ; 1 *Dillon Municip. Corpor., sec.* 252.

The appellants must, consequently, stand upon the powers which the city may lawfully exercise for the support and care of its poor, and upon those only.

Under the powers conferred by law upon the city corporation in respect to its poor, the city has no authority to make provision for that class, except in its Almshouse, or in some other place erected, established or provided by the city and governed by its ordinances, or under the care and charge of the Trustees of the Almshouse, and regulated by such by-laws as they may enact. (Art. 4, sec. 45, 2 Code, 158.) Inasmuch as neither of the appellants derives its existence from the Mayor and City Council, or has been "established" or "provided" by it in any sense, or—what is absolutely indispensable under the statute—is governed by its ordinances or is under the care, charge or administration of the Trustees of the Almshouse, it would seem to follow, of necessity, that the corporation is entirely without power to appropriate money for their benefit, as is sought to be done by the ordinance under discussion. Indeed, it would be difficult for legislation to make it more apparent than it is on the face of the Code, that the whole system of pauper support and government in the City of Baltimore was intended to be administered by the

city itself, in its own municipal establishments, regulated exclusively by its own officers and laws.

But the claims of the St. Mary's school, as well as the St. Vincent's Asylum and the Maryland Institute are urged upon the further ground that they are schools. But are these appellants or is either of them, as a school, within the scope of municipal support? St. Mary's Industrial School, unlike the other two, is situated outside of the corporate limits of the city, several miles in Baltimore County, and its inmates if they are scholars, may come from the whole State. It is plainly, therefore, in no sense a city school. Is either of the other appellants?

Art. 8, sec. 1, of the Constitution, requires the General Assembly, at its first session, to establish by law a thorough and efficient system of free public schools through the State, and to provide by taxation for their maintenance. Under the Acts of 1868, ch. 407, and 1872, ch. 377, the Mayor and City Council have conferred upon them full power and authority to establish such a "system" in the city, and to regulate the same and levy taxes for its support. The Treasurer is likewise directed to pay to the city its portion of the school fund. The Mayor and City Council have accordingly exercised their powers and established their "system" and a very complete one, by ordinances, which will be found in the City Code, pp. 658 to 668, and Supplement to City Code, pp. 238 to 240. The appellants are not, any of them, embraced in this system or connected with it, or governed by the ordinances or officers controlling it. In the very ordinance now under consideration, in which the appellants are classified among the "City Poor," the "Public Schools" are otherwise specifically provided for, and a separate and distinct appropriation of more than half a million of dollars is made for their support. It is submitted, therefore, that none of the appellants are schools, such as the city has a right to maintain or pretends to maintain, and that being

no part of the "system" which alone the city may create and must govern, they are no more entitled to its support, through taxation, than any other private institutions, under the charge of private individuals. The powers of the city, in that direction, are exercisable only in the organization of the "system" required by the Constitution, and independent schools, under private control but supported by taxation, are in direct and pointed antagonism to the whole policy of the Constitution and the statutes. *Jenkins vs. Andover*, 103 *Mass.*, 94, 96, 101, 103 ; *Curtis vs. Whipple*, 24 *Wisconsin*, 353 ; *Loan Association vs. Topeka*, 20 *Wal.*, 669 ; *Merrick vs. Amherst*, 12 *Allen*, 502.

ALVEY, J., delivered the opinion of the Court.

The question of jurisdiction was rather suggested than seriously argued by the counsel for the appellants. Since the case of the *Mayor and City Council of Baltimore vs. Gill*, 31 *Md.*, 375, the question of jurisdiction in a case like the present must be considered as settled in this Court. Parties in the position of the appellees in this case may invoke the restraining powers of a Court of equity, and that Court will entertain jurisdiction of their suit against municipal corporations and their officers whenever the latter are shown to be acting *ultra vires*, or are assuming or exercising a power over the property of the citizen, or over corporate property or funds, which the law does not confer upon them, and where such unauthorized acts may affect injuriously the rights and property of the parties complaining. This is the principle settled by the case to which we have referred, and in addition to the authorities therein cited, we may refer to the cases of *Mercer County vs. Pittsburgh and Erie R. Co.*, 27 *Penn. St.*, 404 ; *Mott vs. The Pennsylvania R. Co.*, 30 *Penn. St.*, 90 ; *Page vs. Allen*, 58 *Penn. St.*, 338, and *Newmeyer vs. The Missouri and Miss. R. Co.*, 52 *Mo.*, 81, and also to 2 *Dillon Mun. Corp.*, sec. 731, in all of which the same proposition is maintained.

St. Mary's Industrial School for Boys *vs.* Brown, *et al.*

The question of jurisdiction being clear, we must consider the question of the appellees' right to relief on the facts as charged in their bill of complaint. That they are tax-payers of the city, and would be affected by the appropriations stayed by the injunction, are facts not controverted by the appellants.

The record before us contains four appeals,—all from the same decree. The first, that of the "St. Mary's Industrial School for Boys;" second, that of the "Maryland Industrial School for Girls;" third, that of the "St. Vincent's Infant Asylum of the City of Baltimore;" and fourth, that of the "Maryland Institute for the Promotion of the Mechanic Arts." These appellants were among a number of other institutions to which appropriations were made by the City Ordinance, approved on the 12th of June, 1875, making general appropriations for that year. The appropriations to the appellants were classed under the head of "City Poor," and were of specific sums of money, without reference to or mention of any relation or agency between the city and those institutions.

The bill of the appellees was filed upon the theory that the Mayor and City Council in the administration of the municipal government, can exercise only the defined and limited powers, and perform the duties, prescribed in the charter of the city, and therefore cannot sustain or aid institutions, however beneficial in themselves, which are not created for or required in the exercise of the powers and performance of duties prescribed by law. The bill charges that the appellants were organized for the administration of private charities, mostly under the influence and control of churches or religious denominations, and are in no sense public institutions; that they are organized by and composed of private citizens and managed by them, and are not under the control or supervision of the City or of the State, nor were any of them formed or incorporated to aid or facilitate the municipal

government of the City in the performance of any of the duties imposed by its charter. It is therefore insisted by the appellees, that such institutions are not in any sense public, or at all events not municipal agencies, such as the City is bound or has the right to maintain, assist, or promote by the exercise of the taxing power. The prayer of the bill is, that the appropriations in question may be declared inoperative and void, and that an injunction be issued to restrain the payment of the appropriations to the institutions to which they were made.

The appellants, in their several answers, controvert the positions of the appellees taken in their bill, and insist that they are now, and have been since their organization, performing functions that properly pertain to the municipal government of the City. That they are charitable and benevolent institutions; the three first named appellants having been organized for the purpose of, and are devoted to, fostering, reforming and educating the pauper children of the City, and thus relieving the City of an expense that would otherwise be entailed upon it; while for the Maryland Institute for the Promotion of the Mechanic Arts it is claimed that it is an important adjunct to the Public School System of the City, and hence should receive aid from the City government. They all deny that they are private corporations, managed for private purposes; but claim, on the contrary, that they are public corporations, managed for public purposes, and are in fact municipal agencies, and therefore entitled to the appropriations made to them as of right.

These institutions are all of the most benevolent and charitable character, and well deserve the patronage and support of all good citizens; but the question here is as to the authority on the part of the municipal government to make appropriations for their support, by the exercise of the taxing power.

Whether these institutions are strictly private, or *quasi* public corporations, it is unimportant here to inquire; it is

enough to know that they do not owe their creation to the municipal power conferred on the City of Baltimore, and were not created for the City by the Legislature of the State, as instruments of municipal administration. They are separate and distinct corporations, composed of private individuals, and managed and controlled by officers and agents of their own, and over which the City has no supervision or control, and for the management of which there is no accountability to the City whatever. No ordinance or resolution of the City Council can control the powers and discretion vested in the managing boards of these institutions, nor have the Mayor and City Council the power to determine who shall or who shall not receive the benefits of the charities dispensed by them.

In the case of the St. Mary's Industrial School for Boys, the fact that the Governor of the State and the Mayor of the City of Baltimore each appoint every two years, three persons to represent the State and City in the board of trustees of that institution, under the amendment of its charter, by the Act of 1874, ch. 288, in no manner changes the nature of the institution, nor makes it a municipal agency. And the same may be said in regard to the amendment to the charter of the Maryland Industrial School for Girls, made by the Act of 1870, ch. 391. The fact that the Governor of the State is empowered to appoint ten, and the Mayor of the City five, of the directors of the institution, the board being composed of thirty, does not put the State nor the City in such relation to the corporation as to make it either a public, State or municipal institution. The object, manifestly, in providing such representation in those institutions, on the part of the State and City, was for the purpose of removing an objection to them, made by some portions of the community, that they were close corporations; that there were no means provided to give assurance to the public that the inmates of the institutions were properly treated; and

St. Mary's Industrial School for Boys *vs.* Brown, *et al.*

insamuch as those institutions themselves applied for and obtained from the Legislature compulsory powers and control over the inmates, it was deemed proper that the State and the City should appoint the number of trustees and directors named. Such trustees and directors, however, do not control the institutions ; nor are they clothed with any State or municipal authority, beyond their mere appointment, to be exercised in the management of the affairs of the institutions, and cannot, therefore, be directed, controlled, limited or restrained, in the exercise of the powers and duties as prescribed in the charters and by-laws of the corporations in whose proceedings they participate. They simply exercise, in common with the other trustees or directors, the special authority conferred by the Acts of incorporation, and nothing more. *Nelson vs. Cushing*, 2 *Cush. Rep.*, 529. So far, therefore, as the City is concerned, these corporations are entirely separate from and independent of it, in all corporate action and control. And as to the Maryland Institute for the Promotion of the Mechanic Arts, the mere fact that the City may own the ground upon which the building is erected, or that the City, in its deed to the institution, has reserved certain privileges in the use of the Hall, as part of the consideration for the grant, cannot constitute that corporation a municipal agency. It is, like the other corporations just mentioned, without municipal relation, and is under no obligation to the City to discharge any mere municipal function for which it can legally claim compensation.

Such, then, being the nature of these institutions and their relation to the municipal government of the City of Baltimore, the question is, upon what principle can the appropriations made to them be legally supported?

It is contended by the appellants, and with considerable force of argument, that though they are not under the control and supervision of the City, yet they have been performing functions and duties that rightfully pertain

and belong to the City government, and have, to that extent, relieved the City from the duty and the expense of providing and maintaining agencies for the performance of those functions under its immediate control ; that it was the duty of the municipal authorities to establish and maintain institutions of like character to those of the appellants, and inasmuch as no such institutions have been established by the City, it is competent for it to exercise the taxing power and apply the funds thus raised to enable or assist others to do what the City has been authorized but failed to do.   And in support of this view of the subject, we are referred to Code, Local Laws, Art. 4, secs. 31, 32, 33, and 827, under title " City of Baltimore."

By sec. 31, just referred to, the Mayor and City Council are authorized to "erect or establish houses of correction, hospitals, or pest houses within or without the City, if necessary, and pass all ordinances *for the government of the same.*"   By secs. 32 and 33, the Mayor and City Council are authorized to pass ordinances "for promoting the great interests and insuring the good government of the City," and also " all ordinances necessary to give effect and operation to all the powers vested in the Corporation of the City of Baltimore."   And by section 827, as modified by Act of 1872, ch. 377, sub-ch. 16, secs. 1 and 4, the Mayor and City Council are authorized "to establish in the City a system of free public schools, under such ordinances, rules and regulations as they may deem fit and proper to enact and prescribe ;" and are also authorized to levy and collect such amount of taxes as may be necessary to defray all the expenses of the system.

Before proceeding to determine what application these or any other provisions of the Code have to the subject under consideration, it will be proper to state some general rules as to the construction of municipal powers.   And first and principally, we must bear in mind that all such powers are delegated, and depend upon legislative charter or grant ;

and that the corporate authorities can exercise no power which is not, in express terms, or by fair and reasonable implication, conferred upon the corporation. In constru- ing a grant of municipal powers, in the case of *Minturn vs. Larue*, 23 *How.*, 435, the Supreme Court of the United States but announced a well established rule when it said, "It is a well settled rule of construction of grants by the Legislature to corporations, whether *public* or private, that only such powers and rights can be exer- cised under them as are clearly comprehended within the words of the Act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the Legislature must be resolved in favor of the public. This principle has been so often applied in the construction of corporate powers, that we need not stop to refer to authorities." This same rule of construction is stated by Judge Cooley, (*Const. Lim.*, 211, 213,) and by Judge Dil- lon, (*Mun. Corp.*, sec. 55,) as settled, and it is supported by a large number of decided cases, to which may be added cases decided by this Court. *Mayor & City Council vs. Clunet*, 23 *Md.*, 437; *Gill vs. Mayor & City Council*, 31 *Md.*, 395. And in respect to the power of taxation, Judge Dillon has summed up the result of the authorities in a very clear and succinct form, (2 *Dillon Mun. Corp.*, sec. 605,) which we cannot do better than give in his own words. He says: "It is a principle universally declared and admitted, that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property, unless the *power be plainly and unmistakably con- ferred*. It has, indeed, often been said that it must be specifically granted *in terms*; but all Courts agree that the authority must be given either in express words, or by necessary implication, and that it cannot be collected by doubtful inferences from other powers, or powers relating to other subjects, nor deduced from any consideration of con-

venience or advantage. It is important to bear in mind that the authority to municipalities to impose burdens of any character upon persons or property is wholly statutory, and as its exercise may result in a divestiture and transfer of property, it must be clearly given and strictly pursued." This is according to the authorities, and is a most just and salutary rule of restriction against arbitrary and unauthorized taxation.

Seeing, then, that there must be authority either plainly expressed in terms or necessarily implied for making the appropriations in question, we fail to perceive how that authority can be deduced from the sections of the Code to which we have been referred. The power to erect or establish houses of correction or hospitals exists, it is true, but those institutions, when erected or established, are required to be governed by the City. They must not only derive their existence from the authority of the City, but they are made municipal institutions, and become agencies in the administration of municipal power. Nor is there anything in sections 32 or 33 bearing upon this subject. They simply declare the authority of the City to pass ordinances for general regulation, and to carry into effect and operation the powers conferred upon the City government. And as to the power supposed to be conferred by the Act of 1872, ch. 377, that has reference alone to the free public school system of the City, established, regulated and governed by the Mayor and City Council, and does not at all contemplate support to institutions like the appellants. It is claimed for the Maryland Institute for the Promotion of the Mechanic Arts that it is a school of an important character, and is of great interest and value to the mechanics and others of the City; that it has accumulated a large circulating library, and has established and successfully maintained large and flourishing schools in the various branches of designing, book-keeping, writing, music and chemistry, all of which have been availed of by

the youth of the City, and that the Institute is in truth an important adjunct of the school system established for the City. All this is doubtless true, and while the establishment of such an institution reflects great credit upon, and has justly become an object of interest and pride to; its founders and supporters, and indeed to the City, the difficulty here is, that it has not been legally embraced in the public school system, and made subject to the ordinances, rules and regulations that the Mayor and City Council may have adopted in pursuance of the Act of 1872, ch. 377. Until this difficulty be removed, the legality of the appropriation cannot be supported under the Act of 1872.

We have carefully examined all the statutes to which we have been referred, and all others in any manner relating to the subjects under consideration, and we have utterly failed to discover any express power, or any by fair implication, by which the appropriations to the appellants, in the manner in which they have been made, can be sustained. They are made without terms or conditions. The institutions could receive the money thus appropriated, and the day after, in the exercise of the powers completely in their control, discharge every inmate received from the City. We speak not of what would likely be done, but of the power to do. The City Council in making these appropriations entirely abdicate all discretion over the subject of their application. They become, therefore, mere donations. Who shall or who shall not be the objects of the charity, the City retains no power to determine. Whether the inmates really belong to the pauper class,—whether they be really objects of municipal care and protection,— are questions that the City authorities do not determine, and have no means of determining. It is all left to the discretion of those who manage the institutions, and they, as we have shown, are not municipal agents, nor subject to any control or accountability as to the use and application

of the money.  It is certain, we suppose, that the City Council could have no power to make appropriations to these institutions simply as such, nor because merely of the very humane and laudable objects and purposes for which they were created by their founders and promoters; it is only because of the actual services and benefits rendered the City that any claim could be urged for their support from the City treasury.  And if this be so, what guarantee has the City that services or benefits will accrue, commensurate with the appropriations that are made?  The same principle that would sustain these appropriations, would equally sustain appropriations to every private school and private charity in the City.  And once concede the power to make them, and it will be in vain to invoke the Courts to exercise a discretion as to any limit in the amount or extent of them.

That the city has ample power delegated to it, and that it is a duty, to provide for the foundlings, the insane, the indigent infirm and helpless, and for the correction of the vicious and vagrant portions of its population, is beyond all question; but whatever provision may be made must be under the control and subject to the supervision of municipal authority.  The authority that is held and exercised in this behalf is a trust, as well for those who become the objects of it, as those who support it by contribution in the form of taxes levied upon their property; and being an important public trust, it cannot be delegated beyond the power and discretion of those to whom it is confided.  We do not design, however, to be understood as intimating that it would not be competent for the Mayor and City Council to contract for the care, maintenance and training of those subject to its power, or who have claims upon its charity, of the class of those cared for, maintained and trained, in the St. Mary's Industrial School for Boys, the Maryland Industrial School for Girls, and the St. Vincent's Infant Asylum of Baltimore.  If the city has not provided

for such persons, or if they can be better taken care of and trained in those, or such institutions, than in the institutions of the city, we can perceive no good reason why the city may not arrange and contract for such care and training. Such contracts appear to have been made in the cases of the "Maryland Lying-in-Asylum," and the "Eye and Ear Institutes;" and we think the power to make such contracts may well be conceded to exist. Its exercise, however, to be valid, must be with the limitation, that the subject-matter of the contract be kept within the power and control of municipal authority, and that complete accountability be provided for; and thus make the institutions contracted with, *pro hac vice*, municipal agencies.

The fact that the institutions may be under denominational or religious control, can in no manner affect their qualification for assuming such relation to the city, or for the full and faithful discharge of the duties that they may contract to perform. Charity, to say the least of the matter, is quite as likely to be fully and faithfully administered under such auspices as it could be under any other. It could, therefore, be no objection that the institutions are or may be under the control and influence of those belonging to any particular church or denomination.

Finding no warrant or authority to justify the appropriations to the appellants, we have no alternative but to declare them void, and must, therefore, affirm the decree as to those appropriations. We shall do so, however, without costs to the appellees.

*Decree affirmed.*

(Decided 22nd June, 1876.)