## DOWNING *v.* ROSS.

Municipal Officers ; Injunctions ; Ultra Vires.

1. A court of equity will, upon the petition of a resident taxpayer, restrain an illegal disposition of the funds or property of a municipality, by its officers, or the illegal creation by them of a debt for which the municipality would be liable, unless it appears that the jurisdiction of the court is invoked simply to promote ulterior or private objects of the petitioner, or objects other than those alleged, irrespective of any injury he may suffer as a taxpayer.

2. So long as public functionaries keep within the limits of the powers vested in them by law, and do not act or attempt to act, *ultra vires* ; a court of equity will avoid interfering with them, and will in no case interfere with the exercise of official discretion vested in such functionaries.

3. The duties of officers entrusted with the letting of contracts for works of public improvement to the lowest responsible bidders, are not duties of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of the courts, so long as they act without fraud and within the scope of their authority.

No. 252. Submitted September 19, 1893.—Decided October 12, 1893.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill filed by the complainants, as property holders and taxpayers in the District, to restrain the defendants, the Commissioners of the District, from accepting a proposal of their co-defendant, Thomas, to pave certain streets in the city of Washington; and to vacate any contract which might have been made with him, upon the ground that such proposal was not made in accordance with

the specifications and instructions under which proposals were invited to be made for doing the work. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. A. S. Worthington* for the appellants:

1. A bill in equity is maintainable by a resident taxpayer against the officers of a municipality, to restrain them from making illegal expenditures or creating illegal debts.    2 Dillon Mun. Corp., Secs. 914, 922 ; 1 Pomeroy's Eq. Jur., Secs. 257, 260, 270, 273 ; *Crampton* v. *Zabriskie*, 101 U. S., 601 ; *The Liberty Bell*, 23 Fed. Rep., 845 ; *New London* v. *Brainard*, 22 Conn., 553 ; *McCord* v. *Pike*, 121 Ill., 288 ; *Merrill* v. *Plainfield*, 45 N. H., 126 ; *Metzger* v. *R. R. Co.*, 79 N. Y., 171 ; *Ayres* v. *Lawrence*, 59 N. Y., 192 ; *Warren* v. *Baldwin*, 105 N. Y., 534 ; *Mayor of Baltimore* v. *Gill*, 31 Md., 394 ; *Newmeyer* v. *R. R. Co.*, 52 Mo., 89 ; *Cammack* v. *Douglas*, Supreme Court, Dist. of Col., Equity No. 11,997 (not reported).

2. A suitor who comes into court with an established right, will not be denied his proper remedy because of some ulterior interest or motive which he may have in bringing the suit.    *Colman* v. *Eastern Counties R. R. Co.*, 10 Beav., 5, 12 ; *Cent. R. R. Co.* v. *Collins*, 40 Ga., 607, 608, 616, 617 ; *Ramsey* v. *Gould*, 57 Barb., 398 ; *Starin* v. *Mayor*, 42 Hun., 551 ; *Mazet* v. *Pittsburgh*, 137 Pa. St., 548 ; *Mayor of Baltimore* v. *Keyser*, 72 Md., 106 ; *Brockman* v. *Creston*, 79 Ia., 592.

3. The Commissioners had no right to award any of the work to the appellee, Thomas, because he qualified his bid with the condition that he should receive not less than 25,000 yards out of the 40,850 yards of paving for which bids were invited.    *Garfielde* v. *U. S.*, 93 U. S., 242 ; *Harvey* v. *U. S.*, 105 U. S., 671, 688 ; *Dickinson* v. *Poughkeepsie*, 7 Hun., 1 ; *Nash* v. *St. Paul*, 11 Minn., 112 ; *Mazet* v. *Pittsburgh, supra* ; *U. S., ex rel. International Contracting Co.* v. *Elkins*, Sup. Ct., D. C., Law No. 33,596 (not reported) ; *People ex rel. Putnam* v. *Commissioners*, 4 Neb., 150 ; *Bigler* v. *Mayor*, 5

Abb. New Cas., 69 ; *Boren* v. *Commissioners,* 21 Ohio St., 311, 318, 322 ; *In re Savings Bank,* 75 N. Y., 396 ; *In re Manhattan R. R. Co.,* 102 N. Y., 301 ; *In re Merriam,* 84 N. Y., 605 ; *Barr* v. *Deniston,* 19 N. H., 170-178 ; *McKenzie* v. *Baraga Township,* 39 Mich., 554 ; *Addis* v. *Pittsburgh,* 85 Pa. St., 379 ; *R. R. Co.* v. *Ray,* 51 Ind., 266 ; *Kneeland* v. *Milwaukee,* 18 Wis., 437 ; *Wells* v. *Burnham,* 20 Id., 122 ; *Mayor of Baltimore* v. *Keyser, supra ; State of Missouri ex rel. Dunn* v. *Barlow,* 48 Mo., 21.

*Mr. S. T. Thomas* and *Mr. A. B. Duvall* for the Commissioners of the District of Columbia, appellees.

*Mr. Mills Dean* for the appellee, Thomas.

The CHIEF JUSTICE delivered the opinion of the Court :

The bill in this case was filed by the three complainants, Charles W. Downing, Joseph Paul and William E. Barker, claiming to be property holders and taxpayers in the District of Columbia, and as such they seek to have the Commissioners of the District restrained from accepting a proposal of, and completing a contract with, one Thomas, a co-defendant, for the paving of certain streets in the city of Washington, and for the vacation of such contract, if made, upon the alleged ground that the bid or proposal for the work, was not in accordance with the specifications and instructions under which proposals were invited to be made for doing the work.

The case is before this court on bill and answer, and, in the argument, only two questions were discussed :

1st. Whether the complainants, as taxpayers, under the facts of the case, have a proper standing in a court of equity to maintain the bill; and if so,

2d. Whether the case presented on the bill and answer shows sufficient ground for the relief prayed?

1. With respect to the first of these questions, the law would seem to be well settled, though not in the unqualified

manner suggested in argument. To prevent abuse of the powers of the court, the application must always be made in good faith, and upon an apparent wrong to the complainant and the public of which he is a member. Otherwise, the court will refrain from any interference with the public functionaries sought to be enjoined. It must not appear that the jurisdiction of the court is invoked simply to promote ulterior or private objects of the party applying, or objects other than those alleged, irrespective of any injury he may suffer as a taxpayer. But, with this qualification, the general principle is, that it is the right of a resident taxpayer to invoke the interposition of a court of equity to prevent an illegal disposition of the funds or property of the municipality, or the illegal creation of a debt which he, in common with other property holders of the community, may otherwise be compelled to pay. As said by the Supreme Court of the United States, in *Crampton* v. *Zabriskie*, 101 U. S., 601, 609, "in the absence of legislation restricting the right to interfere in such cases to public officers of the State or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate powers. *The courts may be safely trusted to prevent the abuse of their process in such cases.*" The principle is established by abundant authority and is of very general application. 2 Dillon on Municipal Corp., Secs. 914 to 918, and cases there cited. See also cases of *Baltimore* v. *Gill*, 31 Md., 375, and *St. Mary's Industrial School* v. *Brown*, 45 Md., 310, 326. It is admitted that the complainants are taxpayers; and there is not sufficient evidence in the case to show that they are acting collusively, and making use of a privilege designed for their own protection and that of the public to subserve third parties in an effort to accomplish unjustifiable objects, as has been contended by the defendants. We are of opinion, therefore, that the complainants, in their character of taxpayers, are entitled to file the bill and to ask the relief prayed for, provided the facts disclosed are sufficient.

2. Then, do the facts disclosed by the bill and answer make a case to justify the granting the relief prayed for? The complainants disclaim any charge or imputation of fraud or collusion in the transaction between the Commissioners and Thomas. It is conceded that the Commissioners have acted throughout honestly, but, as contended by the complainants, under a mistaken conception of their duty, in accepting and acting upon the proposal made by Thomas, though he was in fact the lowest bidder for the work embraced in his proposal. The complainants allege several objections in their bill to the acceptance by the Commissioners of the proposal as made by Thomas; but, by stipulation of the parties filed in the cause, it is agreed that on this appeal "no question shall be argued or raised except those which grow out of the condition contained in the bid or proposal of the defendant Thomas as to the awarding to him of at least 25,000 square yards of pavement."

To a clear understanding of the nature of the proposal, and the condition referred to in this stipulation, it is necessary that we refer to some of the provisions of the acts of Congress relating to the District of Columbia, and state some of the facts set forth in the bill and answer.

By the fifth section of the act of Congress of 1878, Ch. 180, approved June 11, 1878, providing a permanent form of government for the District of Columbia, it is provided that whenever any repairs of streets, avenues, alleys, or sewers within the District are to be made, or when new pavements are to be substituted in place of those worn out, new ones laid, or new streets opened, sewers built, or any works, the total cost of which shall exceed the sum of one thousand dollars, notice shall be given in newspapers, as in the statute prescribed, "for proposals, with full specifications as to the materials for the whole or any portion of the works proposed to be done; and the *lowest responsible proposal* for the kind and character of pavement or other work which the Commissioners shall determine upon, *shall in all cases be accepted; Provided, however,* That the Commissioners shall

have the right, *in their discretion*, to reject all of such proposals ; *Provided,* That work capable of being executed under a single contract shall not be subdivided so as to reduce the sum of money to be paid therefor to less than one thousand dollars. All contracts for the construction, improvement, alteration, or repairs of the streets, avenues, etc., and all work of like nature, shall be made and entered into only by and with the official unanimous consent of the Commissioners of the District," etc. It is further provided that " No pavement shall be accepted, nor any pavement laid, except that of the best material of its kind known for that purpose, and in the most substantial manner ; and good and sufficient bonds to the United States, in a penal sum not less than the amount of the contract, with sureties to be approved by the Commissioners of the District, shall be required from all contractors, guaranteeing that the terms of their contract shall be strictly and faithfully performed to the satisfaction of and acceptance by said Commissioners; and that the contractors shall keep new pavements or other new works in repair for a term of five years from the date of the completion of their contracts," etc. 20 Stats., 106.

By the act making appropriations for the expenses of the government of the District of Columbia for the fiscal year ending June 30, 1894, etc., (act of Congress, approved March 3, 1893, Ch. 199), there was appropriated the sum of $200,000 " to be expended in the discretion of the Commissioners upon streets and avenues " specified in the schedules named and referred to in the act, etc., with the proviso " that the streets and avenues shall be contracted for in the order in which they appear in said schedules, and be completed in such order as nearly as practicable."

In execution of the power under the general appropriation act of Congress just referred to, and in pursuance of the directions of the act of 1878, Ch. 180, the Commissioners of the District, on the 15th of March, 1893, published notice for sealed proposals for laying sheet asphalt and asphalt block pavements in the section of the city of Washington

mentioned in the schedules referred to in the act of Congress. In the notice, all persons desirous of becoming bidders for the work were informed that blank forms of proposals, specifications, and all necessary information, could be obtained at the office of the Commissioners. Full instructions and specifications were prepared, and copies of which were furnished to any and all persons applying for them. They were furnished to the defendant Thomas, and to all others who became bidders for the work; and all proposals were made out and presented with reference to these specifications and instructions. The Commissioners reserved the right to waive any informality in the proposals received; also to disregard the proposal of any failing bidder or contractor, and to reject the proposal or parts of a proposal, if bids were requested on separate items; and the right was also reserved to make awards on each street separately. These provisions and reservations are contained in the specifications or instructions furnished to the bidders and annexed to the proposals filed with the Commissioners. The quantity of paving with respect to which proposals were received, under the notice, was about 40,850 square yards.

In response to the advertisement by the Commissioners, several proposals were filed, and among them that made by Thomas, one of the defendants. The proposal by Thomas was, for the portion of the paving awarded to him, the lowest made; but in the proposal he interlined the condition that he should be awarded at least 25,000 square yards of the pavement to be made. This is the condition referred to in the bill and in the stipulation, and which has given rise to this application for an injunction, upon the theory that it entirely vitiated and rendered illegal the proposal made by Thomas. To this, however, we do not agree.

This proposal, thus made, was not accepted by the Commissioners with the condition annexed, but being the lowest bid made for the work, the Commissioners rejected or ignored the condition, and accepted the proposal without any regard whatever to the condition interlined, and thereupon

awarded to Thomas a portion of the work proposed to be done, amounting to about 21,000 square yards. This action of the Commissioners Thomas acquiesced in, and has complied with all the terms of the specification and the requirement of the statute, by executing and delivering to the Commissioners the contract and bond for the faithful performance of the work. It is true, Thomas had no right, under the notice, to couple his proposal with a condition, such as he attached; and it was the right, indeed the duty, of the Commissioners to reject such condition. This was done, and the proposal was treated as if made without condition. The Commissioners aver, and swear positively, that they awarded the contract to Thomas because he was the lowest responsible bidder for the work, and that they paid no regard whatever to the condition interlined in the proposal. This they clearly had a right to do; and their action in the premises did not, and could not, in the nature of things, operate to the prejudice of any other bidder, and certainly not to the public. As we have before stated, all imputation of fraud or collusion is expressly disclaimed ; and if such charge had been made, it would have been incumbent upon the complainants to establish it by affirmative proof, to the satisfaction of the court.

Under what circumstances, and to what extent, a court of equity can be invoked to restrain the action of a board of commissioners representing the public; or under what circumstances a mandamus would properly issue, at the relation of a party supposing himself aggrieved, against such officials, are questions of frequent occurrence, but not of uniform decision in this country.

In England the question would seem to be settled as to the powers of a court of chancery to restrain by injunction.

In the case of *Frewin* v. *Lewis*, 4 M. & Cr., 249, the plaintiffs filed their bill, asking for the interposition of the court, upon the ground that the defendants, a body of public functionaries, had exceeded, or proposed to exceed, their authority; and in disposing of the question of jurisdiction

raised upon demurrer to the bill, the Lord Chancellor said: "I apprehend that the limits within which this court interferes with the acts of a body of public functionaries, constituted like the poor law commissioners, are perfectly clear and unambiguous. So long as those functionaries strictly confine themselves within the exercise of those duties which are confided to them by the law, this court will not interfere. The court will not interfere to see whether any alteration or regulation which they may direct is good or bad; but, *if they are departing from that power which the law has vested in them*; if they are assuming to themselves a power over property which the law does not give them, this court no longer considers them as acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing with property without legal authority." The same doctrine is sanctioned and followed in all the subsequent English cases upon the subject. See the case of *Lord Auckland* v. *Westminster Local Board of Works*, L. Rep., 7 Ch., 597.

In this country, while the same doctrine as to the restraining power of a court of equity is maintained, the foundation of the jurisdiction is placed generally upon the ground of a breach or abuse of trust by the officials. But, as held by all the best considered cases, both here and in England, so long as the public functionaries keep within the limits of the powers vested in them, and do not act, or attempt to act, *ultra vires*, the court avoids interfering with them, and will not in any case interfere with the exercise of official discretion vested in such functionaries. Duties of officers entrusted with the letting of contracts for works of public improvements, to the lowest responsible bidder, such as those imposed upon the Commissioners in this case, are not duties of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of the courts, so long as they act within the limit or scope of the authority delegated to them. The statutory requirement that these contracts shall be let to the lowest

responsible bidder is intended for the benefit and protection of the public, rather than that of the bidders; and it is incumbent upon the party invoking the interposition of the court to show plainly that there has been, or that there is danger of being, such assumption or usurpation of authority by the Commissioners, or such fraudulent abuse of their powers, as to render it proper for the court to interfere, as a necessary condition to inducing the court to exercise its powers of restraint. Here, there being no pretense of fraud, we utterly fail to perceive wherein the Commissioners have exceeded the limits of the authority confided to them. It is conceded that the defendant Thomas was in fact the lowest bidder for the work awarded to him; and by the terms of the statute it is declared that " the lowest responsible proposal for the kind and character of pavement or other work which the Commissioners shall determine upon, *shall in all cases be accepted.*" Act 1878, Ch. 180, Sec. 5.

· The principles upon which we decide this case are maintained by the general current of authority. Mr. High, in his valuable work on Injunction, Sections 1237 and 1240, and also in his Treatise on Mandamus, Section 92, has collected the authorities and fairly deduced the conclusion therefrom, in accordance with the principles we have stated.

The learned counsel for the complainants, in his very ingenious and able presentation of this case, has brought to our attention several cases supposed to be in support of his contention ; but, upon examination, those cases will be found distinguishable from the present. And without intimating that they furnish precedents that we should be willing to follow on similar statements of fact, they all seem to assert a general principle with which we should be disposed to agree. They are not, however, authorities in this case.

Entertaining the views we have expressed, we shall affirm the decree of the court below appealed from, dismissing the bill of complaint, with costs to the defendants.

*Decree affirmed.*