# THE BALTIMORE AND EASTERN SHORE RAIL-ROAD COMPANY *vs.* PRESTON B. SPRING.

*Taxation for a Private Purpose—Constitutional Law—Injunction by Taxpayer.*

An Act of the Legislature, the effect of which is simply to levy a tax on the citizens of a certain county to pay certain residents of that county the debts due them by an insolvent railroad company, is unconstitutional, because it involves taxation for a private purpose.

Counties have no inherent power of taxation, and the Legislature can only delegate to them the power to tax for public purposes.

The Act of 1892, ch. 295, authorized the Commissioners of Talbot County to issue bonds to the amount of $25,000, "to pay a subscription" of the county to the B. & E. S. R. Co.; and provided that the proceeds of the sale of the bonds should be first applied to the payment of the claims of the citizens of Talbot County against said company. This Act was confirmed by the Act of 1894, ch. 152. At the time of the passage of the Act of 1892, Talbot County had not in fact made any subscription, either to the stock or to the bonds of the company, and the railroad had then been completed, but was insolvent and in the hands of a receiver. *Held*, that the Act was unconstitutional, and that an injunction should be issued restraining the County Commissioners from issuing the bonds.

Appeal from an order of the Circuit Court for Talbot County (STUMP, J.) The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., McSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*John Prentiss Poe*, Attorney-General (with whom was *Joseph B. Seth* on the brief), for the appellant.

*Thomas B. Mackall* and *Wm. H. Adkins*, for the appellee.

The Act of 1892, chapter 295, approved by the Act of 1894, chapter 152, is unconstitutional and void. It is an attempt to authorize the County Commissioners of Talbot County to issue bonds involving the taxation of all the

taxable property of the county, in order to raise money to pay certain favored creditors of the Baltimore and Eastern Shore Railroad Company—in other words, to authorize taxation for private purposes. The right of the Legislature to authorize municipal corporations to aid railroad companies, subject to the provisions of the Constitution of Maryland, is not denied. The purpose of the Act in question, however, is not to authorize Talbot County to aid a railroad company. At the time of the passing of said Act of 1892, chapter 295, the Baltimore and Eastern Shore Railroad Company had been completed and was in operation and was insolvent and in the hands of a receiver. No possible benefit could accrue to the people of Talbot County from the expenditure of their money as provided in the Act of 1892. Not one additional rail or tie could be laid by reason thereof, or one car added to the rolling stock of the company. The entire proceeds of the bonds would go to the private beneficiaries who have procured the passage of the Act.

The fact that the professed purpose of the Act of 1892, chapter 295, is to provide for the payment of a subscription to a railroad company, does not change its real purpose as disclosed by a consideration of all its terms. It is an old device of those seeking illicit legislative favors to attempt to procure the enactment of unconstitutional or otherwise illegal measures under the cover of misleading phraseology, or in the shape of provisos and conditions. Such legislation will not bear the test of judicial investigation. Courts, in construing a statute, look to all the terms to find the true meaning and intent of the Legislature, and if the real and controlling purpose of an Act is found in a proviso, and that purpose is illegal, the whole Act will be declared void. *Brooks* v. *Hydom*, 76 Mich. 272 ; 42 N. W. Reporter, 1122; *Mayor and City Council of Balto.* v. *Gill*, 31 Md. at page 387.

The Constitution provides for two classes of taxation : 1. For the support of the Government. 2. With a political view for the good government and benefit of the community. *Declaration of Rights*, Art. 15 ; see *Moale* v. *Mayor*, 5 Md.

314, 320; *Gould* v. *Mayor,* 59 Md. 378, 380; *O'Neal* v. *Md. Bridge Co.,* 18 Md. 1, 23; *Mayor* v. *Greenmount Cemetery,* 7 Md. 517. The second clause of Article 15, Declaration of Rights, is an enlargement, and the only permissible enlargement, of the power to tax. *Wells et al.* v. *Hyattsville,* 77 Md. at page 141. No taxation is constitutional which cannot be brought within one or the other of these provisions of the Constitution. To tax a citizen for private purposes is to take his property without due process of law, and is, therefore, a violation of the Federal as well as of the State Constitution. *Declaration of Rights,* Art. 23; *14th Amendment, Constitution of U. S.*

Whether the use, in any particular case, be public or private, is a judicial question; for otherwise the constitutional restraint would be utterly nugatory, and the Legislature could make any use public by simply declaring it to be so, and hence its will and discretion would become supreme, however arbitrarily and tyrannically it might be exercised. *New Central Coal Company* v. *George's Creek Coal and Iron Co.,* 37 Md. 460; *Van Witsen et al.* v. *Gutman,* 79 Md. It is true that the last mentioned constitutional provision has regard more particularly to the right of eminent domain, which is distinct from the right to tax. But so far as concerns the use or purpose for which the right may be exercised or authorized by the State, the same rule governs both cases. The use must be public.

In *Cole* v. *La Grange,* 113 U. S. page 1, the Court say: " The general grant of legislative power in the constitution of a State does not enable the Legislature, in the exercise either of the right of eminent domain or of the right of taxation, to take private property without the owners' consent for any but a public object. Nor can the Legislature authorize counties, cities or towns to contract, for private objects, debts which must be paid by taxes." See also *Parkersburg* v. *Brown,* 96 U. S., 16 Otto, page 489; *County Commissioners of Talbot Co.* v. *Co. Commrs. of Queen Anne's Co.,* 50 Md. pp. 258, 259 and 260; *Van*

*Witsen* v. *Gutman,* Court of Appeals of Md., June 20, 1894, 29 Atl. Rep. 608; *Lowell* v. *Boston,* 111 Mass. 454 (15 Amer. Rep. 45), 1873; *Mead* v. *Inhabitants of Acton,* 1 N. E. Rep. at page 413; *Clee et al.* v. *Sanders et al.* (Mich.) 42 N. W. Rep. page 154; *Allen* v. *Inhabitants of Jay,* 60 Maine, 124 (11 Am. Rep. 185), 1872; *Feldman* v. *Charleston,* 23 S. C. 57 (55 Am. Rep. 6), 1884; *State of Kansas* v. *Township of Osawkee,* 14 Kansas, 419 (19 Am. Rep. 99), (1875); *Citizens', &c., Assn.* v. *Topeka City,* 20 Wall. 655; *Thorndike* v. *Camden,* 82 Maine, 39, and 19 Atlantic Rep. 95 (1889); *Dillon, Mnmicipal Corporations,* sections 159, 508 and 736; *Kingman* v. *Brockton,* 153 Mass. 255 (1891); 26 N. E. Rep. 498.

The power conferred upon a municipal corporation to impose a burthen upon taxpayers in aid of a railroad company is in derogation of the common law, and when granted must be clearly conferred and strictly pursued. No presumptions are made in favor of such legislation. *Mayor, &c., Balto.* v. *Gill,* 31 Md. at page 395; *St. Mary's Industrial School* v. *Brown,* 45 Md. 332; *Balto. and Drum Point R. R. Co.* v. *Pumphrey,* 74 Md., at page 93.

The Act of 1892, chapter 295, is a violation of the 14th Amendment of the Constitution of the United States. In *Ulman* v. *Mayor, &c., of Baltimore,* 72 Md. p. 592, it is said: "Due process of law is not confined to judicial proceedings. The Article (XIV) of the Constitution (of the United States) is a restraint on the legislative, as well as on the executive and judicial powers of the government, and cannot be so construed as to leave the Legislature free to make any process due process of law, by its mere will and pleasure."

PAGE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Talbot County, directing a writ of injunction to be issued restraining the County Commissioners of that county from issuing the bonds mentioned in chapter 295 of the Acts of

the General Assembly of 1892, and in chapter 152 of the Acts of 1894. The bill was filed by a taxpayer and citizen of Talbot County, on behalf of himself and other citizens and taxpayers of that county. It is alleged that these "Acts are unconstitutional, and for other reasons invalid, null and void."

Such of the facts appearing by the record, as are requisite to be stated for the purposes of this opinion, may be thus briefly set forth. The Baltimore and Eastern Shore Railroad Co. was incorporated by the General Assembly in the year 1886, for the purpose of constructing and operating a railroad through Talbot and other counties of the State of Maryland. At the same session, by chapter 509, the Commissioners of Talbot County were authorized to endorse the bonds of the Railroad Company to an amount not exceeding $50,000, after it had been sanctioned by the voters of Talbot County; such bonds were to be secured by a mortgage which should be second to a mortgage to the city of Baltimore. This Act, which authorized only an endorsement of bonds, and not a subscription to the stock of the railroad, though voted upon favorably by the voters of Talbot County at the general election of 1887, it is conceded became inoperative for the purpose of authorizing the proposed endorsement, for reasons not necessary to be now stated. By the Act of 1890, ch. 150, the County Commissioners of Talbot County were authorized to subscribe to the capital stock of the company to the amount of $25,000. This Act, however, was not published as required by Article 3, sec. 54 of the Constitution, and for that reason became invalid. Soon after its incorporation in 1886, the railroad company proceeded to construct its road, and having fully completed it, operated it until the 21st of April, 1891, when, having become totally insolvent, its property rights and franchises passed into the hands of a receiver, appointed by the Circuit Court of the United States for the District of Maryland; and since that date, under the decree of that Court, all of its property and franchises have been sold to other parties. So

that in 1892, when the Act of 1892, ch. 295, which will be subject of our examination, was passed, the road was entirely constructed, and after having been operated for a short time, had experienced all the results of insolvency, up to .the point of having its affairs administered by a receiver for the benefit of its creditors.

From this recital it is clear that, prior to 1892, there had never been any valid power conferred upon the County Commissioners either to endorse the bonds of the company or subscribe to its stock; nor is it pretended that they ever undertook to exercise such power. In the agreement of parties, found in the record, it is stated that the Commissioners " never passed any resolution to endorse the bonds * * or to subscribe to the stock." The statement, therefore, contained in the preamble of the Act of 1892, ch. 295, also in the body of the Act (and also in the Act of 1894, ch. 152), to the effect that the authority to issue bonds was conferred for the purpose of raising money to "pay the county's subscription" to the capital stock of. the railroad company, was wholly unfounded in fact. The County Commissioners never did (and never had the power to) make such subscription. There is no question in this case, therefore, of good faith on the part of the county, no contractual element to embarrass the Court in determining the strictly legal effect of the Act of 1892, ch. 295, and the confirmatory Act of 1894, ch. 152.

What, then, are the provisions of these Acts? By the first section of the Act of 1892, the Commissioners are authorized to issue the bonds of the county to the amount of $25,000; by the second, it is provided that they "shall sell said bonds," and with the proceeds thereof pay said subscription of said county to said railroad company; provided, however, that before any bonds shall be issued under this Act, the said railroad company " shall file, in the office of the County Commissioners of Talbot County, an agreement, in writing, authorizing the said County Commissioners of Talbot County to first pay and satisfy *all proper and legal*

claims and demands held by *bona fide* residents of Talbot
County, on the twentieth day of April, in the year 1891,
against said railroad company, out of the proceeds arising
from the sale of said bonds, and the balance, if any, to ap-
ply under the order and direction of Joseph B. Seth, the
president of said railroad company." If the claims thus pro-
vided for should prove to be in excess of the $25,000, it is
enacted by the third section that they shall be paid *pro rata*,
and the receipt of persons holding such claims, and of the
president of the company, in the event of any balance re-
maining after the payment of the claims, shall be good
against the railroad and all others claiming under it; and
by the fourth section, a " committee " of three are appointed
" with full power and authority " to determine the amount
of each claim and who are entitled to be paid, and their
decision is to be final and without appeal.

To comprehend these provisions thoroughly, it must be
borne in mind that the railroad company, at the date of the
passage of the Act, had fully constructed its road. It had
also become insolvent, and on the day after the date men-
tioned in the Act, that is, on the 21st of April, 1894, it had
passed into the hands of a receiver. No doubt it had many
creditors. In Talbot County there were claims exceeding in
the aggregate the entire amount of the proposed subscrip-
tion, and the record shows there was a bonded debt of
$1,600,000, secured by a mortgage upon all the property
of the company. Subsequent events have shown that its
insolvency was hopeless; such as could only terminate as
it did—in a sale for the benefit of its mortgage creditors.
Under these circumstances it was plain there was little
probability that these creditors in Talbot County, unsecured
as they were, could ever hope to have their claims paid in
the ordinary way. Now, as was said by this Court in *M.
& C. C. of Balto.* v. *Gill*, 31 Md. 387, " we must not forget
that we are dealing with the substance, not with form. It is
the thing done or sought to be accomplished which must
determine the question of the power." The purpose of this

Act was not to aid in the construction of the road, because
the road was then completed, nor even to pay debts in-
curred in the construction, for the beneficiaries of the Act
were all those who, being residents of Talbot County, held
" proper and legal claims " against the company, and this
included all claims, whether· incurred by the company in
constructing the road or otherwise.    That the subscription
was to be made to enable the county to discharge an obliga-
tion imposed upon it by the requirements of good faith, was,
as we have seen, founded upon an assumption, and absolutely
false.    The conclusion seems to be inevitable that the
effect and scope of the act is simply to levy a tax upon
the property of the citizens of Talbot County, to pay to cer-
tain residents of that county the claims due to them by. an
insolvent railroad company.    This is a private purpose, and
not one of the objects of taxation.    By the Declaration of
Rights, Art 15, as well as by the fundamental maxims of a
free government, taxes can only be imposed to raise money
for public purposes.    " Taxes are burdens or charges im-
posed by the Legislature upon persons or property to raise
money for public purposes."    *Cooley Cont. Lim.* 479.    If
it be necessary to cite authorities to maintain this thoroughly
established principle, the following may be mentioned : *Citi-
zens' Savings and Loan Ass.* v. *Topeka City*, 20 Wall. 655 ;
*Cole* v. *La Grange*, 113 U. S. 1 ; *Cooley Cont. Lim.*, sec.
488, and authorities there cited ; *Lowell* v. *Boston*, 111
Mass. 454.    *Sharpless* v. *Mayor,&c.*, 21 Penn. St. 168 ; *Brod-
head* v. *Milwaukee*, 19 Wis. 652 ; *St. Mary's Ind. School* v.
*Brown*, 45 Md. 335.

Nor can this Act be supported under the 54th sec. of
Article 3.    The object of this section was not to extend the
power of taxation.    It is, in fact, "a limitation of power,
not only of the local authority, but of legislative power
itself."    *Pumphrey's case*, 74 Md. 111.    Counties have "no
inherent power of taxation."    What power of taxation they
exercise must be delegated to them by the Legislature.
The Legislature, however, cannot delegate a power prohib-

ited by the Constitution. Therefore, the taxing power, when exercised by the county authorities, as was said by this Court in the case of *Daly* v. *Morgan*, 69 Md. 468, " is but the exercise of the taxing power of the Legislature delegated to them, and is subject to every constitutional limitation to which the taxing power of the Legislature is subject." *St. Mary's Ind. School, &c.,* v. *Brown*, 45 Md. 333.

Being of the opinion that the object and effect of this Act is not to subserve a public purpose, but to pay certain individuals by taxing the property of the people of Talbot County for their benefit, we must pronounce the Act itself unconstitutional and void.

Inasmuch as what we have said disposes of the case, we deem it unnecessary to consider the other questions raised at the argument.

*Order affirmed.*