## THOMAS B. FINAN *v.* MAYOR AND CITY COUNCIL OF CUMBERLAND.

[No. 65, January Term, 1928.]

*Decided March 24th, 1928.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Richard F. McMullen,* for the appellant.

*William C. Walsh* and *Charles Z. Heskett,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

This case presents a question of the validity of an issue of bonds by the Mayor and City Council of Cumberland under the authority of an Act of Assembly of 1927, chapter 411.

564

The act directs specifically that $100,000 of the proceeds of sale of the bonds be advanced to the Allegany Hospital of Sisters of Charity, a private eleemosynary corporation which conducts a general hospital in the city, and it is questioned whether power can validly be given to the city to appropriate or advance public funds to such a corporation for its purposes. A total issue of $500,000 is provided for in the act, and the proceeds of sale of $400,000 are to be devoted to the erection and maintenance of a municipal hospital in Cumberland, the remaining $100,000 to be advanced to the Allegany Hospital as stated. The advance is, by the terms of the act, to be for the purpose of further hospitalization in or near the City of Cumberland, the fund to be used for the erection of buildings, and for additions and improvements; and the act provides that the money so advanced is to be returned upon demand in the event that the corporation shall within twenty years voluntarily relinquish the work of hospitalization in or near Cumberland.

That the use of public funds in the erection or maintenance of a general hospital by a governmental agency directly would be used for a proper public purpose, there can be little if any doubt. In *University of Maryland v. Williams*, 9 G. & J. 365, 397, "a hospital created and endowed by the government for general purposes of charity" is given as an illustration of a public corporation; and in *St. Mary's Industrial School v. Brown*, 45 Md. 310, 333, it was recognized that under an express provision in its charter Baltimore City had power to erect or establish houses of correction or hospitals. No dispute of the propriety of that use under legislative sanction was before the court in those cases. For many years there has been general statutory authority given to municipal and county authorities in Maryland to provide hospitals or temporary places for the reception of the sick. Code, art. 43, sec. 62. And see article 44. And during a large part of the existence of the state government, hospitals of various kinds have been maintained here by governmental agencies, and it has generally been regarded and treated as a normal govern-

mental activity. What is a public purpose for which public funds may be expended is not a matter of exact definition; it is almost entirely a matter of general acceptation. *Savings & Loan Assn. v. Topeka,* 20 Wall. 450; *Green v. Frazier,* 253 U. S. 233, 240; *Milheim v. Moffatt Tunnel Dist.,* 262 U. S. 710, 719; *Gray, Limitations of Taxing Power,* sec. 259. And in general acceptation and practice, the erection and maintenance of a hospital is regarded as a use of funds for a public purpose. In most of the large cities of America and continental Europe, it seems, hospitals are maintained by municipalities. *Encyc. Brit. "Hospital."* And all decisions in other states of which we have knowledge agree in treating the use as public. *Battle v. Wilcox,* 128 S. C. 500, 505; *Associated Sanatorium v. James,* 144 Ky. 314; *Tuberculosis Hospital v. Peter,* 253 Mo. 520. Indeed, the validity of the appropriation, under the present act, of $400,000 for a municipal hospital is not questioned; it is only the furtherance of such a public purpose by appropriating money to a private general hospital that is in dispute. The Allegany Hospitals of Sisters of Charity is undoubtedly a private corporation, for it was regularly organized as such, elects its own managers and is in no way subject to public authority or control. *University of Maryland v. Williams, supra; St. Mary's Industrial School v. Brown,* 45 Md. 310, 329. Its work is in large part charitable, but it also takes pay patients, as all economically conducted hospitals do. The trial court came to the conclusion, after an exhaustive consideration of the questions raised, that the appropriation to it was valid; and this court has come to the same conclusion.

The objection to the appropriation is based mainly on the opinion in the case of *St. Mary's Industrial School v. Brown, supra.* In that case, however, the question decided was whether the Mayor and City Council of Baltimore might, merely under their general powers to further such objects, do so indirectly by paying their funds over to the St. Mary's Industrial School and other agencies as channels of expenditure for those objects, instead of doing so directly, by their

own public agencies. As Chief Judge Alvey stated them, the contentions in support of appropriations to the agencies were these: The corporate agencies concerned denied that they were private corporations, managed for private purposes, contending that they were public corporations, managed for public purposes, and were in fact municipal agencies, and therefore entitled to the appropriations made to them as of right. And with this the court disagreed, holding that notwithstanding their purposes might be public, and such as the city might, under its general powers, support with public funds, and notwithstanding the state and city had appointed trustees on their boards, the corporations were none the less private, because they were privately organized and controlled, and were not under the control of the city government. A second, alternative, contention was that, even though these agencies might not be under the control and supervision of the city, yet they had been performing functions and duties that rightfully pertained and belonged to the city government, and had to that extent relieved the city from the duty and expense of providing and maintaining agencies for the performance of those functions under its immediately control; that it was the duty of the municipal authorities to establish and maintain institutions of like character to those of the agencies concerned, and inasmuch as no such institutions had been established by the city, it was competent for it to exercise the taxing power and apply the funds thus raised to enable or assist others to do what the city had been authorized but failed to do. And with respect to this contention the court held that the powers given the city had been given in contemplation of performance by the city, and could not be delegated. "That the city has ample power delegated to it," said the court, "and that it is its duty, to provide for the foundlings, the insane, the indigent infirm * * *, is beyond the question; but whatever provision may be made must be under the control and subject to the supervision of municipal authority. * * * Being an important public trust, it can not be delegated beyond the power and discretion of those to whom it is confided." The

decision was one construing the legislative authority given, and, as the trial judge in this case says, it seems clearly to have proceeded upon an assumption that the Legislature might give authority for the delegation of function and the payment of the funds contended for, and found merely that this authority had not been given in the then existing statutory law. Long before, it had been decided that public funds might under proper legislative authority be appropriated to aid private agencies performing services to the community which were public in nature. *University of Maryland v. Williams, supra; St. John's College v. State,* 15 Md. 330. And from the beginning of the state government it had been the policy and practice to accomplish public purposes indirectly by such means; and all constitutions promulgated since the beginning had been framed unquestionably in full knowledge of this policy and practice, and in none was anything inserted or changed to interfere.

The court, in *St. Mary's Industrial School v. Brown,* did not therefore deny the validity of municipal appropriations to private agencies under specific legislative direction, and for the appropriation now being considered we have a specific legislative direction. We see no constitutional objection to it, once we accept the purpose to be furthered as a public one. Not only has it long been the policy of the State to further public objects by such means, but it still is so, and no question or doubt of the legal correctness of this policy has ever before been raised. There is a governmental board of state aid and charities for the supervision of such expenditures, and its report, filed in this case, lists over one hundred private agencies aided, including a large number of hospitals of various kinds. See *Snowden v. Balto. Gen. Dispensary,* 60 Md. 85. And in this long established policy and practice, not interfered with by any constitutional change, and generally accepted for so long a period without question or doubt, the appropriation now being considered would seem to have amply sufficient support as a valid one for a public purpose. See *State v. Mayhew,* 2 Gill, 487, 497; *Tyson v. State,* 28 Md. 577; *Trustees of Catholic*

*Church v. Manning,* 72 Md. 116, 130; *Levin v. Hewes,* 118 Md. 624, 641; *Arnreich v. State,* 150 Md. 91, 106. It need hardly be mentioned that, if the policy may constitutionally be followed by the State, the City of Cumberland, which is an agency of the State, may be authorized and directed to follow it. *Mayor etc. of Baltimore v. State,* 15 Md. 376, 462; *Daly v. Morgan,* 69 Md. 460, 467.

*Decree affirmed, with costs to the appellees.*