STATE EX REL. VOELKEL, Respondent, vs. THIESSEN and others, Appellants.

*June 6—June 21, 1939.*

For the appellants there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and oral argument by *Ray C. Dempsey.*

For the respondent there was a brief by *Barber, Keefe, Patri, Stillman & Nolan* of Oshkosh, and oral argument by *W. Meade Stillman.*

NELSON, J.   So many of the facts as are necessary to an understanding of this controversy may be summarized as follows : The city of Oshkosh acquired its water plant in 1913 and has operated it ever since.   From 1913 to the end of 1927 certain water mains were installed and extended at a cost of $252,973.36, all of which was charged to and paid by the water department, notwithstanding the provisions of sec. 925—100, Stats. 1913, which, so far as here material, was as follows :

"1. The board of public works, before laying any water pipe . . . along any street . . . shall assess against the several lots . . . which may front or abut on the proposed line of water pipe . . . such sum as such lot or parcel of land will be, in the judgment of said board, specially benefited by reason of laying such water pipe . . . not to exceed, however, the amount described in the next section."

Sec. 925—99b, Stats. 1913, provided that the city could use the funds of the utility to pay the balance of the city's portion of the improvement.   The statutes just mentioned were not changed until 1921.   Sec. 925—100 was then renumbered sec. 62.19 and sec. 925—99b became sec. 62.20. Sec. 62.20 (2) was amended by the 1921 revision.   The language : "All the residue of such contract shall be paid out of the waterworks fund" was eliminated and the following language incorporated into the statute :

"The amount chargeable to the city shall be paid as the contract for the work may provide."

In 1923 sec. 62.19, Stats., was amended and the following provision relating to extensions enacted :

"(8) *Extensions*.   The expense of laying water and heat mains which are extensions to plants theretofore purchased or constructed shall be defrayed by the city at large, or by the abutting property as the council shall determine.   Such work may be done by contract, or the council may provide that the work may be done by the city without the intervention of a contractor."

The manner of paying the city's portion remained unchanged. The benefits that could be assessed against any property under sec. 62.19 (2), Stats., could not exceed one half the cost of furnishing and laying a water main of more than six inches. Ever since the amendment of sec. 62.19 (8) in 1923 it has been optional with a city whether extensions to water mains should be paid for by it or by abutting property as specifically limited by statute. On July 12, 1927, the council duly passed the following resolution:

"Resolved, by the council of the city of Oshkosh, that hereafter water-main extensions and laterals be installed in the city of Oshkosh as provided in chapter 62, statutes of the state of Wisconsin, and the expense thereof defrayed by abutting property."

Commencing in 1928 and continuing through 1934, the city installed water mains at a total cost of $107,140.03, and assessed to the abutting property owners $56,025.73 of the cost thereof, leaving $50,289.50 as the city's share, which was charged to and paid by the board of water commissioners. Commencing with the year 1935 and continuing up to the time of the trial, the city abandoned its seven-year policy of assessing benefits against abutting property, and during the years 1935 to 1938, inclusive, the cost of such extensions, amounting to $65,993.31, was all charged to and paid by the water utility. It thus appears that from 1913 to 1928 all extensions were charged to and paid by the water utility; that from 1928 to 1934, inclusive, benefits were assessed against property owners; that commencing in 1935 the city abandoned its seven-year policy of assessing property owners for benefits, and thereafter made extensions at the expense of the city, the cost of which was charged to and paid by the water utility. It also appears that during the years that benefits were assessed, the benefits were not uniformly assessed during those years. At first the assessments were $1 per front foot, later they were raised to $1.60, then

lowered to eighty cents, and finally reduced to sixty cents. It appears that during all of the years mentioned, $369,256.17 of the cost of extensions had been charged to and paid by the utility and that only $56,025.73 had been assessed as benefits to abutting property owners. The city of Oshkosh having decided in 1935 no longer to assess abutting property owners for any part of the cost of water-main extensions, the injustice of having theretofore for a few years assessed certain property owners for a part of the cost of water-main extensions, was sensed by many and a way was sought legally to reimburse such persons. After consultation with the attorney general, who, it is asserted, was of the opinion that legislative authority would have to be obtained before reimbursement to such persons could be made, the 1937 legislature was asked to pass a law, which would authorize the city to reimburse such persons, with the result that ch. 319, Laws of 1937, was enacted. That chapter amended sec. 66.06 (10) (d), Stats., by adding thereto the following:

"Where in any municipality water mains have been installed or extended and the cost thereof has been in some instances assessed against the abutting owners and in other instances paid by the municipality or any utility therein, notwithstanding the provisions of section 62.19 it may be provided by the governing body of such municipality that all persons who paid any such assessment against any lot or parcel of land may be reimbursed the amount of such assessment regardless of when such assessment was made or paid. Such reimbursement may be made from such funds or earnings of said municipal utility or from such funds of the municipality as the governing body may determine."

Subsequent to July 1, 1937, the effective date of ch. 319, the common council, on September 20, 1937, passed a resolution which in its preamble, referred to ch. 319, Laws of 1937, recited the facts that in the city certain water mains had been laid at the expense of the utility and other water mains had been laid and assessments therefor had been charged to property owners, and that a provision of said chapter authorized

reimbursement to be made either from the funds or earnings of the utility or from the funds of the municipality as the governing body of the city might determine, and then continued:

"Whereas, at the present time, there are no funds available from the earnings of said utility or from the funds of the municipality with which to meet full and immediate repayment of said assessments; and,

"Whereas, it is the desire of the common council that repayment should be made out of the earnings of the water utility over a reasonable period of time, rather than out of general municipal funds to be raised by general taxation;

"Now therefore; be it resolved by the common council of the city of Oshkosh, pursuant to authority vested in it by the state legislature under chapter 319 of the Laws of Wisconsin for 1937, that the Oshkosh water board and the Oshkosh water department be, and they are, hereby authorized and directed to make repayment in accordance with the provisions of said chapter 319, of assessments heretofore levied and paid to such persons as are entitled thereto under the provisions of said law, and in accordance with the records of the Oshkosh water department; and,

"Be it further resolved that such repayment to be made over a period of three (3) years; the first payment of one third (⅓) of the amount due each person who paid any such assessment to be made on or about January 1, 1939, and an additional payment of one third (⅓) to be paid on or about January 1, 1940, and the final payment of one third (⅓) of such amount to be paid on or about January 1, 1941; and,

"Be it further resolved that proper city officials, including the members of the water board, and any and all employees of the water department, are hereby authorized and directed to do all necessary, proper, and legal acts to carry into effect the purposes and intent of this resolution, which resolution is hereby intended to provide for a repayment within a period of approximately three (3) years of assessments referred to in said chapter 319 of the Laws of Wisconsin for 1937."

The plaintiff was the owner of two lots which abutted on a street along which an extension to the water mains was made, resulting in an assessment of benefits amounting to

$100 which he paid on February 28, 1929. The officers of the utility refused to comply with the directions of the council.

The trial court was of the view that ch. 319, Laws of 1937, is constitutional, and that it was passed for the purpose of authorizing municipal corporations to recognize and pay claims which in strict law and for technical reasons could not be enforced, but which are just and equitable in character and involve a moral obligation. Although ch. 319, unquestionably was enacted as a result of the particular situation which existed in the city of Oshkosh, it applies to all municipalities in this state. It does not require municipalities to reimburse property owners who have been assessed for the cost of water-main extensions or compel municipalities to do so. It simply authorizes the governing body of any municipality in which exists the situation described in the chapter to reimburse persons, who as abutting owners have paid assessments for water-main extensions.

The appealing defendants assail the constitutionality of ch. 319, Laws of 1937, upon the ground that the legislature was without power to enact it. The attack upon the law is largely based upon the assertion that the legislature was without power to pass a retroactive law authorizing the city to refund water-main assessments which had been paid to the city by property owners in part payment of the cost of water-main extensions, pursuant to valid assessments, and where the right to question them was barred by law. The attack upon the ordinance is based upon the contention that the common council was without power to pass an ordinance in pursuance of a void statute.

The question for decision is whether ch. 319, Laws of 1937, violates the constitution of this state. The defendants contend that the court erred in refusing to quash the alternative writ, (1) because the legislature was without power to enact ch. 319, (2) because the ordinance passed in pursuance

thereof was void and of no effect because passed in pursuance of an unconstitutional statute, (3) because the council could not, by resolution, appropriate future earnings of the water utility for the purpose of refunding to persons who, as abutting property owners, had theretofore paid water assessments which were validly made and voluntarily paid, and (4) because the city was without authority to use public funds for private purposes. Before discussing the contentions it may be stated at the outset that commencing in 1913 and continuing down to 1923, when sec. 62.19 (8), *supra*, was enacted, the city of Oshkosh, in not assessing abutting property owners for water-main extension benefits, concededly did not comply with the applicable law, and that during the years 1928 to 1934, when assessments for water-main extensions were made they were in all respects valid, and the persons who paid them had no legal right to recover them or justly claim that they were entitled to be reimbursed.

The plaintiff contends that ch. 319, Laws of 1937, is a valid enactment and unassailable on constitutional grounds. He contends that no provision of the constitution prohibits the legislature from enacting laws which authorize municipalities to make restitution or reimbursements to persons who have no legal or equitable claims that may be enforced by the courts, but who do have claims founded in equity and justice in the largest sense of those terms, or in gratitude or charity, or claims that are just and equitable in character and involve a moral obligation. The plaintiff's contention is, in our opinion, amply supported by a number of our decisions. In the early case of *Brodhead v. Milwaukee,* 19 Wis. *624, *652, it was said:

"The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute. To justify the court in arresting the proceedings and declaring the tax void, the absence of all possible public interest in the purposes for which the funds are raised must be clear and palpable—

so clear and palpable as to be perceptible by every mind at the first blush. In addition to these, I understand that it is not denied that claims founded in equity and justice in the largest sense of those terms, or in gratitude or charity, will support a tax. Such is the language of the authorities."

In *State ex rel. McCurdy v. Tappan,* 29 Wis. 664, 672, the *Brodhead Case* was referred to and the holding therein approved. It was said "that claims for public services, or expenditures founded in equity and justice, in gratitude or charity, will support a tax, which is voluntarily imposed upon a municipality by a majority of the citizens thereof, or by the consent of the municipality, evidenced in some other manner." A similar conclusion in an analogous situation was reached in *Lund v. Chippewa County,* 93 Wis. 640, 67 N. W. 297. In a comparatively recent case, *Will of Heinemann,* 201 Wis. 484, 230 N. W. 698, it was held that the legislature was not without power to enact a law under which counties were compelled to repay to persons or estates that had paid inheritance taxes pursuant to the provisions of a law subsequently declared to be unconstitutional, such share of such taxes as the county had received and retained. The court, in a carefully considered decision, said (p. 492) :

"However, by virtue of the control which the state has over its municipalities, it is generally held that the legislature may compel municipal corporations to recognize and pay debts or claims not binding in strict law, and which for technical reasons could not be enforced in equity, but which nevertheless are just and equitable in their character and involve a moral obligation." (Citing numerous cases.)

The defendants attempt to distinguish the holding in that case upon the ground that unconstitutional taxes had been exacted there, while here only legal assessments which had been voluntarily paid are involved. In our opinion, the difference in the facts do not render the law of the *Heinemann Case* inapplicable here if a recognized moral obligation may be said to be involved under the facts of this case. The *Heinemann Case* went much farther than we are required to

go upon this appeal for the reason that the statute there considered and held to be constitutional compelled the counties to pay back inheritance taxes collected and retained by them. Ch. 319, Laws of 1937, is not a mandatory law.

The plaintiff contends that under all of the circumstances of this case a moral obligation existed to reimburse those persons who, as property owners, had paid the assessments. The defendants, on the other hand, contend that the facts of this case give rise to no moral obligation on the part of the city to reimburse the persons who paid assessments during the years 1928 to 1934, inclusive, because no moral obligation to reimburse persons who have paid valid assessments for benefits conferred upon them can possibly exist. The people who asked the legislature to enact ch. 319, Laws of 1937, the legislature itself, and the common council of the city of Oshkosh, obviously thought otherwise. While ch. 319 did not mention the words "moral obligations," a moral obligation was undoubtedly the underlying reason for enacting that law. In our opinion, the situation in Oshkosh was such as clearly to give rise to the belief that under all of the circumstances the city owed a moral obligation to reimburse those who had paid the assessments. From 1913 to the end of 1937, water-main extensions, the cost of which amounted to $369,256.17, were made, charged to, and paid by the utility, and during the years when assessments were made, $56,025.73 was assessed to and collected from persons who were subject to assessments. The amounts charged to the utility were paid out of the earnings of the water department. Those earnings arose out of the moneys paid by consumers. While the properties of those who were assessed were doubtless benefited by such improvements, so were the properties of those who paid no part of the cost of other water-main extensions made along the streets upon which their properties abutted. The city, not the contractor, as argued by the defendants, was obviously benefited by the added improvements and extensions to its utility property which in part

were paid for by abutting property owners. The water consumers in Oshkosh presumably pay the same rates. That it is inequitable and unjust, in a broad sense, to charge those who have contributed nothing toward the cost of water-main extensions the same rates as those who have paid substantial assessments and thereby contributed to the upbuilding of the utility plant, is a reasonable conclusion. The assertion that there can be no moral obligation on the part of the city to reimburse the water consumers of the city of Oshkosh who have paid assessments and thereby place them upon a basis of equality with other consumers who have contributed nothing seems to us to require no particular discussion. When the plan shall have been worked out approximate equality between the consumers will exist. We entertain no doubt that a moral obligation existed and that the legislature had the power to pass ch. 319 and authorize municipalities to make reimbursements of assessments paid under circumstances such as existed in Oshkosh.

The contention of the defendants that ch. 319, Laws of 1937, was a retroactive law which the legislature was without power to enact is, in our opinion, without merit. We find nothing in the law which may properly be said to render it retroactive. All that it does is to permit municipalities to recognize moral obligations as a basis for reimbursing those who have paid assessments. As before stated, the law simply authorizes the governing body of a municipality to determine whether assessments made and collected were under all of the circumstances, and in a broad sense, inequitable, resulting in injustice and gave rise to a moral obligation to repay or reimburse to the end that equality might thereafter exist among the consumers of water. Ch. 319 did not affect the law under which the assessments were made or the validity of the assessments.

The defendants further contend that the use of the funds of the utility for the purpose of reimbursing the persons who

are within the terms of ch. 319, Laws of 1937, and the resolution is not for a public purpose and such proposed payments should be condemned on that ground. In *Will of Heinemann, supra,* page 486, it was said :

"The statute was passed in recognition of the moral obligation of the state to return moneys collected under a void taxation law. That the appropriation of money by the state for the purpose of discharging its moral obligations constitutes an appropriation for a public purpose, and is within legislative power, is neither challenged nor discussed in the briefs, and this very appropriately, as there is no judicial dissent from that proposition."

Since we have held that a moral obligation existed, the language just quoted would seem to dispose of the contention that the proposed payments are not to be made in furtherance of a public purpose.

The defendants further contend that the council was without authority to pass the resolution because it appropriates future earnings of the utility for the purpose of reimbursing those who have in the past paid assessments. This contention is grounded upon sec. 66.06 (11) (c), Stats., which reads as follows :

"The income of a public utility owned by a municipality, shall first be used to meet operation, maintenance, depreciation, interest, and sinking-fund requirements, local and school tax equivalents, additions and improvements, and other necessary disbursements or indebtedness. Income in excess of these requirements may be used to purchase and hold interest-bearing bonds, issued for the acquisition of the utility, or bonds issued by the United States or any municipal corporation of this state, or insurance upon the life of an officer or manager of such utility, or may be paid into the general fund."

An attempt presently to appropriate future surplus earnings of the utility might conceivably be subject to attack if at a given time in the future there are no such earnings. At the present time, however, we need not concern ourselves with

any such contention since the resolution provided that "the first payment of one third of the amount due each person who paid any such assessment . . . be made on or about January 1, 1939." The present action relates only to that payment. Neither the judgment nor the peremptory writ commanded the payment to the plaintiff of more than the sum of $33.33⅓. It further appears from the return of the appealing defendants, that if ch. 319, Laws of 1937, be held constitutional, and the city officials have the right to use water funds for such purposes there are sufficient funds on hand to make the payment sought to be compelled. Whether the financial situation of the utility may be such on January 1, 1940, or on January 1, 1941, as to render the resolution unlawful, we cannot, of course, foretell.

The defendants make other contentions which we have carefully considered but which in our view do not require discussion.

*By the Court.*—Judgment affirmed.