CARL SNOWDEN *v.* ANNE ARUNDEL COUNTY,
MARYLAND

[No. 92, September Term, 1982.]

*Decided February 23, 1983.*

430

The cause was argued before MURPHY, C. J., and SMITH, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Stephen H. Schwartz,* with whom was *Alan Hilliard Legum, P.A.* on the brief, for appellant.

*Robert C. Wilcox, Assistant County Solicitor,* with whom was *Steven P. Resnick, County Solicitor,* on the brief, for appellee.

*Amicus curiae* brief of Anne Arundel County, Lodge No. 70, Fraternal Order of Police, Inc. filed. *Ronald H. Jarashow* and *Goldsborough, Franch & Collett, P.A.* on the brief.

MURPHY, C. J., delivered the opinion of the Court.

The issue presented in this declaratory judgment action is whether a charter county is empowered to enact an ordinance authorizing payment to certain of its public safety employees for legal expenses incurred in a successful defense against criminal or departmental misconduct charges.

I

The challenged ordinance was passed as Bill 201-81 by the Anne Arundel County Council and is codified as Anne Arundel County Code §§ 1-1400 — 1-1405 (1982). It authorizes the creation of a Criminal Reimbursement Expense Fund to prepay or reimburse legal expenses incurred by sworn paid members of the County police and fire departments, detention center officers, members of volunteer fire departments and of rescue squads, who are charged with a criminal offense or departmental violations arising out of the performance of their duties. To be eligible for payment under the ordinance, an employee must receive a final determination which exonerates him of all criminal or administrative charges. The ordinance permits advance payments for legal expenses, provided the employee posts adequate collateral and signs a note for the amount of the advance, promising to repay the money if not ultimately cleared of the charges. The County retains the right to determine the reasonableness of the expenses submitted, subject to an appeal process.

The appellant Snowden petitioned the Circuit Court for Anne Arundel County to declare the ordinance violative of the County Charter and the law of Maryland. Snowden claimed that the ordinance did not serve a public purpose but rather unconstitutionally authorized the use of public funds for a private purpose. The court (Goudy, J.), after finding that there was no material factual dispute, granted the County's motion for summary judgment; it concluded that the ordinance served a valid public purpose and was therefore a lawful enactment. We granted certiorari prior to consideration by the Court of Special Appeals of Snowden's

appeal to consider the significant issue of public importance which the case presents.

## II

Snowden contends that Anne Arundel County was not empowered to enact the challenged ordinance because the authorized expenditures were for a private and not a public purpose. No public purpose is served, he argues, because the ordinance directly benefits a limited class of private individuals — principally police and fire department personnel — "despite the fact that others may also need this service." Snowden further argues that since an employee who has been acquitted of criminal or departmental charges may still be guilty, no public purpose could be served by reimbursing his expenses. To do so, Snowden maintains, "could make an officer less inclined to exercise proper due care and restraint." He urges that we hold that "[t]here is a greater public benefit in avoiding this ordinance than there is in maintaining it."

As we noted in *Mont. Citizens League v. Greenhalgh,* 253 Md. 151, 158, 252 A.2d 242, 245 (1969), "[t]he power of a political subdivision . . . to enact laws depends on the extent to which the General Assembly has delegated to it its legislative powers which 'are plenary, except as limited by constitutional provisions.'" As a charter county formed under the provisions of Article XI-A of the Constitution of Maryland, Anne Arundel County is empowered by the Express Powers Act, Maryland Code (1981 Repl. Vol.), Art. 25A, § 5 (S) "to pass . . . such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county." This "general welfare" or "general grant of power" clause has been broadly construed to permit charter counties to legislate beyond the powers expressly enumerated in the Express Powers Act. As we noted in *Greenhalgh, supra,* 253 Md. at 160-61:

"Gratification would not be afforded the purposes of home rule or the reasons which prompted it if the

language of § 5 (S) of Art. 25A were not to be construed as a broad grant of power to legislate on matters not specifically enumerated in Art. 25A and the language of that section clearly indicates that such a construction is sound. . . .

". . . [N]ot only does it empower legislative action designed to carry out, exercise and implement enumerated powers, it goes further to add that power is given 'as well' to ordain for the maintenance of peace, good government, health and welfare of the County."

We have held that § 5 (S) authorizes a charter county to enact fair housing laws, *Greenhalgh, supra,* regulate landlord-tenant relations, *County Council v. Investors Funding,* 270 Md. 403, 312 A.2d 225 (1973), direct the activities of volunteer fire departments which accept county funds, *Prince Geo's Co. v. Chillum-Adelphi,* 275 Md. 374, 340 A.2d 265 (1975), and waive sovereign immunity, *Bradshaw v. Prince George's County,* 284 Md. 294, 396 A.2d 255 (1979).

Anne Arundel County is authorized to exercise the full extent of its delegated powers. Section 304 of the County Charter provides:

"[T]he County Council shall have and may exercise all legislative powers which, under the Constitution and laws of this State, it would be competent for this Charter specifically to enumerate."

Section 305 makes the exercise of the County Council's powers "subject to the express limitations imposed by this Charter and by all applicable provisions of the Constitution and laws of this State." One such limitation upon the County's broad grant of legislative power is the constitutional requirement of Article 15 of the Maryland Declaration of Rights which in effect prohibits the expenditure of county tax revenues for other than a public purpose.[1]

---

1. Article 15, in pertinent part, provides that

"all taxes . . . levied by the State for the support of the general State

In *Balto. & E. S. R. R. Co. v. Spring,* 80 Md. 510, 31 A. 208 (1895), suit was filed to enjoin a legislatively authorized issuance of bonds by Talbot County. The proceeds of the bonds were to be applied to payment of debts owed by a bankrupt railroad. We concluded:

> "This is a private purpose, and not one of the objects of taxation. By the Declaration of Rights, Art. 15, as well as by the fundamental maxims of a free government, taxes can only be imposed to raise money for public purposes. 'Taxes are burdens or charges imposed by the Legislature upon persons or property to raise money for public purposes.' Cooley Cont. Lim. 479." *Id.* at 517, 31 A. at 210.

Giving content to the "public purpose" requirement has not been a simple task.[2] As we said in *Finan v. M. & C. C. of Cumberland,* 154 Md. 563, 565, 141 A. 269, (1928), and more recently in *Horace Mann League v. Board,* 242 Md. 645, 685, 220 A.2d 51, *cert. denied,* 385 U.S. 97, 87 S. Ct. 317, 17 L. Ed. 2d 195 (1966): "What is a public purpose for which public funds may be expended is not a matter of exact definition; it is almost entirely a matter of general acceptation." In *Frostburg v. Jenkins,* 215 Md. 9, 16, 136 A.2d 852 (1957), we discussed *Spring* and *Finan,* commenting "that the line of demarcation is not immutable or incapable of adjustment to changing social and economic conditions that are properly of public and governmental concern." We said, 215 Md. at 19:

---

Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or subclass of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community."

**2.** Defining the "public use" requirement for the proper exercise of the power of eminent domain has caused similar difficulties. *See, e.g.,* City of Baltimore v. Chertkof, 293 Md. 32, 441 A.2d 1044 (1982); Pr. George's Co. v. Collington, 275 Md. 171, 339 A.2d 278 (1975). Analytically, the two concepts are related, since in each private property is being appropriated for public benefit, and there are parallel dangers that governmental power might be perverted to private benefit.

"The Constitution does not guarantee a static condition of society, or write into our basic law the economic doctrine of laissez-faire. So long as the legislation has a substantial relation to the public welfare and can fairly be said to serve a public purpose, it is not the courts' function to strike it down, merely because we fear it may lead to unwise or unfortunate results."

*Frostburg* involved a legislative enactment which authorized the use of public funds to finance the construction of buildings to be sold to manufacturing companies. We there noted the duty of the courts to "determine whether the particular use is within the scope of the constitutional powers," *id.* at 16; we concluded that the purpose of the expenditure, to encourage industrial development in the city, had "a substantial relation to the public welfare and can fairly be said to serve a public purpose." *Id.* at 19.

Our cases have consistently upheld the propriety of payment of public funds to private institutions or individuals, as long as a public purpose is served thereby. *See, e.g., Reyes v. Prince George's County,* 281 Md. 279, 380 A.2d 12 (1977); *Wilson v. Board of Co. Comm'rs,* 273 Md. 30, 327 A.2d 488 (1974). *See also Horace Mann League v. Board,* 242 Md. 645, 220 A.2d 51, *cert. denied,* 385 U.S. 97, 87 S. Ct. 317, 17 L. Ed. 2d 195 (1966); *Johns Hopkins Univ. v. Williams,* 199 Md. 382, 86 A.2d 892 (1952). The legislative body is primarily entrusted with ensuring that the public purpose requirement is fulfilled, and the courts have no duty unless and until a perversion of public funds to private purposes is obvious. *Board of Education v. Wheat,* 174 Md. 314, 199 A. 628 (1938). A court does not "sit as a 'superlegislature to weigh the wisdom of legislation,' " *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124, 98 S. Ct. 2207, 57 L. Ed. 2d 91 (1978). As we noted in *McBriety v. Baltimore City,* 219 Md. 223, 233, 148 A.2d 408 (1959):

"A court does not pass upon the wisdom of an ordinance nor approve or disapprove it. The function of the courts, if and when the question is

raised, is to ascertain whether the ordinance exceeds constitutional limits. . . . Moreover, the courts assume that municipal authorities have full knowledge of local conditions and that their determination, in the light of such knowledge, with respect to the necessity and reasonableness of a regulation to promote the public interests, is valid unless the contrary is affirmatively shown."

*Accord, City of Bowie v. County Comm'rs,* 260 Md. 116, 271 A.2d 657 (1970).

*Valerius v. Newark,* 84 N.J. 591, 423 A.2d 988 (1980), involved a municipal ordinance similar to the ordinance challenged in the present case; it authorized reimbursement of legal expenses incurred by police officers who successfully defended against criminal or departmental charges arising out of the performance of their duties. There, as here, it was contended that the ordinance unconstitutionally directed the use of public funds for a private purpose. The Supreme Court of New Jersey found no merit in the contention. It held that the enactment served a public purpose, stating that it "relates to an essential function of government . . . [and that the] object sought to be accomplished affects the public welfare and is in the public interest." 423 A.2d at 992. *Accord, Roper v. Town of Laurinberg,* 90 N.C. 427 (1884); *Cullen v. Town of Carthage,* 2 N.E. 571 (Ind. 1885). Prepayment or reimbursement of such legal expenses has been justified on the ground that it encourages the recruitment and retention of high-risk public officers by alleviating the potential liability of having to expend personal funds to defend unfounded charges. *See, e.g., Askew v. Green, Simmons, Green & Hightower,* 348 So.2d 1245, 1248 (Fla. Dist. Ct. App. 1977). Since a municipality may be civilly liable for the criminal actions of its officials, reimbursement of the legal expenses incurred by such officials following a successful defense serves to protect the municipal corporation. *City of Montgomery v. Collins,* 355 So.2d 1111, 1114-15 (Ala. 1978). It has been held that the policy of reimbursement encourages a "faithful and courageous discharge of duty on the part

of public officers." *Curry v. City of Portage,* 195 Wis. 35, 217 N.W. 705 (1928). *Sonnenberg v. Farmington Township,* 39 Mich. App. 446, 197 N.W.2d 853 (1972), also involved the question whether a municipality was empowered to authorize the reimbursement of legal fees incurred by police officers charged with crimes arising out of and in the course of their employment. The Michigan court, in concluding that the municipality was so empowered, quoted with approval from a Texas case, *City of Corsicana v. Babb,* 290 S.W. 736, 737 (Tex. Comm. App. 1927), as follows:

> " 'Indemnification of a city officer against liability incurred by reason of an act done by him in the *bona fide* performance of his official duties is a municipal function. That expenditures made in indemnifying the officer against such a liability do not constitute a gratuity, but constitute a public expense of the municipality for which city funds may be used, is sustained by the weight of authority in this country. A city, therefore, is invested with the discretionary power to employ attorneys to defend one of its policemen against a criminal charge founded upon an act done by such officer in the *bona fide* performance of his official duties.' "

The court in *Sonneberg* also relied on *Messmore v. Kracht,* 172 Mich. 120, 137 N.W. 549 (1912), which upheld the reimbursement of legal expense incurred by a deputy sheriff in the successful defense of a civil action. The court found no reason to distinguish between civil and criminal legal expense reimbursement; it said:

> "Indeed, such a distinction would appear both arbitrary and unreasonable. Where a police officer has successfully defended both civil and criminal charges arising from measures he had taken in the scope of his employment, it would be absurd to limit his possible reimbursement to the civil action only, where both actions might have had their origins in the same incident." *Id.* at 448-49, 197 N.W.2d at 854.

There appears to be no valid reason to distinguish between criminal and civil legal defense expenses. The general rule is that a municipal corporation may indemnify public officials, acting in good faith, for legal expenses incurred in civil suits brought against them for acts committed in the discharge of their duties. In *Estes v. City of North Miami Beach,* 227 So.2d 33 (Fla. 1969), the city council employed special counsel to defend four councilmen sued individually in a civil action by a losing candidate. Against a challenge that public funds were being used for a private purpose, the Supreme Court of Florida upheld the expenditure on the ground that the city had an interest which would be affected by the outcome of the proceedings. *See* cases cited and discussed in Annot., 130 A.L.R. 736 (1941 and Supplemental Decisions) and 2 C. Antieau, *Municipal Corporation Law* § 15A.19 (1982). Indeed, it is the general rule that a municipal corporation may indemnify public officials for judgments rendered against them for acts committed in the performance of their duties, either by procuring insurance, *see* Annot., 71 A.L.R.3d 6 (1976), or by directly indemnifying the public officials for such civil judgments, *see* Annot., 71 A.L.R.3d 90 (1976). In *City of Chattanooga v. Harris,* 223 Tenn. 51, 442 S.W.2d 602 (1969), a statute indemnifying fire and police employees against judgments rendered in suits arising out of the performance of their official duties was upheld by the Supreme Court of Tennessee on the ground that such reimbursement could be considered part of the employees' compensation, thus serving a public purpose. Certainly, the public interest served by reimbursing a high-risk public safety employee for legal expenses incurred in successfully defending against criminal or departmental charges arising out of the performance of his duties is as great as indemnifying a public official who has been adjudged liable for damages in a civil action.

In this case, the County maintains, and we agree, that the public benefits from the challenged ordinance because its provisions better enable the County to recruit and retain qualified public safety employees, and to maintain morale. The ordinance affords necessary protection to those

employees who, by the nature of their calling, are uniquely at risk of suffering financial liability as a result of their duties. The ordinance provides reimbursement only to one who has successfully defended against criminal or administrative charges. The advance payment provision is no more than a loan, secured by collateral and formalized in a confessed judgment note, requiring reimbursement in the event the employee is not successful in his defense. In *Bradshaw v. Prince George's County,* 284 Md. 294, 304, 396 A.2d 255, 261-62 (1979), we noted:

> "[A] public purpose is served by protecting officials when they act in an exercise of their discretion. *See Duncan v. Koustenis,* 260 Md. 98, 271 A.2d 547 (1970); *Arrington v. Moore,* 31 Md. App. 448, 358 A.2d 909 (1976). Particularly in the case of law enforcement officers, the exercise of discretion may call for 'decisiveness and precipitous action' in response to crises. *Arrington, id.* at 464."

Consistent with the principles expressed in our decisions and in the cases in other jurisdictions, we find, as a matter of general acceptance, that the challenged ordinance can fairly be said to serve a public purpose.[3]

*Judgment affirmed; costs to be paid by appellant.*

---

**3.** Several early New York cases, upon which Snowden relies, appear to hold that a statute similar to the ordinance in this case does not serve a public purpose in that reimbursement of legal expenses constitutes a "gift" to the individual. *See, e.g.,* Chapman v. City of New York, 168 N.Y. 80, 61 N.E. 108 (1901). These cases are plainly out of the mainstream of authority and we decline to follow them. A later New York case, Gavin v. Board of Sup'rs, 221 N.Y. 222, 116 N.E. 996 (1917), holds that such statutes do serve a public purpose if their application is a purely prospective one.