Dear L. Russell Molnar
On behalf of the Wicomico County Council, you have inquired whether the Council has the power to refund a transfer tax assessed and collected under emergency legislation that was subsequently rejected by the voters in a referendum. Included with your request was a copy of the opinion of the County Attorney that the County may not legally refund the taxes that were collected. A copy of that opinion is attached.
We have carefully reviewed the opinion of the County Attorney. We agree that the Council lacks authority to enact a tax refund. In our view, a reasonable argument may be made that the General Assembly could provide authority for a refund if it were to amend the County's taxing authority to permit refunds or tax credits related to those payments.
 I Background
A. County Transfer Tax
Wicomico County has adopted charter home rule under Article XI-A of the Maryland Constitution. As a charter county, Wicomico County has broad legislative authority under the Express Powers Act. See Annotated Code of Maryland, Article 25A, §§ 4, 5. However, while the Express Powers Act authorizes the County to impose property taxes, it does not grant general taxing authority.[1]
In 1992, the General Assembly enacted a public local law enabling the Wicomico County Council to impose development impact fees and a transfer tax. Chapter 399, Laws of Maryland 1992, now codified as Wicomico County Code ("WCC"), §§ 203-22, 203-23. The maximum rate of the authorized transfer tax is 1%. WCC § 203-23.
Under the authority of WCC § 203-23, the County Council passed a 1% local transfer tax on May 31, 2000. See Wicomico County Council Bill No. 2000-5 (enrolled bill).[2] Revenue from the tax was dedicated to school construction or to reduction of debt incurred in connection with school capital projects. Id., Section I (enacting WCC § 203-27). The tax was enacted as an emergency measure and took effect on the date of its enactment. Id., Section II.
B. Referendum
The bill enacting the transfer tax was petitioned to referendum pursuant to § 309-1 of the Wicomico County Charter. At the election held on November 7, 2000, the transfer tax ordinance was rejected by the voters. Because the ordinance had been enacted as an emergency measure, the transfer tax remained in effect until 30 days after the election. See Wicomico County Charter § 309-1(d). Had the ordinance not been enacted as an emergency measure, however, a valid referendum petition would have delayed effectiveness of the tax until approval of the measure by the voters. Wicomico County Charter §§ 308-1(g), 309-1(d).
The transfer tax established by the emergency ordinance was thus in effect for approximately six months from its passage at the end of May until the beginning of December. You state that, following rejection of the transfer tax ordinance by the voters, the County Council is "of the unanimous view that the taxes collected pursuant to the ordinance should be refunded."
 II Analysis
A. Authority to Refund Taxes
No question has apparently been raised as to whether the ordinance establishing the transfer tax was validly enacted or whether the taxes were properly collected.[3] Accordingly, your question is whether the County may voluntarily return the funds collected under a validly enacted tax that is later overturned by referendum.
We agree with the County Attorney that the County lacks authority simply to refund the monies collected or to enact a tax exemption for the benefit of those taxpayers who paid the transfer tax. Notwithstanding charter home rule, Wicomico County does not have general taxing authority. As the County Attorney's opinion points out, neither WCC § 203-23 nor the Tax-Property Article of the Annotated Code of Maryland gives the County plenary power to enact tax exemptions. Nor does the power to tax delegated to a political subdivision necessarily include the power to create exemptions from a tax.[4] Church Home and Infirmaryv. Mayor and City Council of Baltimore, 178 Md. 326, 330-32, 13 A.2d 596
(1940).
The County could, of course, ask the General Assembly to amend the taxing authority granted by WCC § 203-23 to give the County express authority to return amounts collected out of the County's general funds. The Court of Appeals has noted that, because the General Assembly has authority to authorize a tax, it has the power "by retroactive legislation to . . . insure equality of treatment" by enacting a retroactive exemption. Baltimore County v. Churchill, Ltd., 271 Md. 1,313 A.2d 869 (1974). Whether that course of action is permissible depends upon whether granting a refund in these circumstances serves a public purpose.
B. The Public Purpose Requirement
It is beyond dispute that public money may not generally be devoted to a private purpose.[5] "By the Declaration of Rights, Art. 15, as well as the fundamental maxims of a free government, taxes can only be imposed to raise money for public purposes." Snowden v. Anne Arundel County,295 Md. 429, 434, 456 A.2d 380 (1983), quoting Balto. E.S.R.R. Co. v.Spring, 80 Md. 510, 31 A. 208 (1895); see also City of Frostburg v.Jenkins, 215 Md. 9, 14, 136 A.2d 852 (1957) ("It is a general rule that the public funds of municipalities cannot properly be devoted to private use, even when expressly authorized by the Legislature").
On the other hand, payment of public funds to individuals or private institutions is not improper if a public purpose is served. Snowden,295 Md. at 435. Determination of a "public purpose" defies creation of a bright line test: "the line of demarcation is not immutable or incapable of adjustment to changing social and economic conditions that are properly of public concern." City of Frostburg, 215 Md. at 16; see alsoFinan v. Mayor and City Council of Cumberland, 154 Md. 563, 565, 141 A. 269
(1928) (what constitutes a "public purpose" is "not a matter of exact definition; it is almost entirely a matter of general acceptance").
"Public purpose" has been described generally as a purpose that "has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents" of a jurisdiction. Bowling v. Brown,57 Md. App. 248, 259, 469 A.2d 896 (1984). In reviewing legislative action, "it is only necessary that the legislative determination to spend a particular amount of public funds be reasonable and based on an honest judgment of those officials charged with the care of the public purse that the expenditure is for the best interests of the [jurisdiction.]"Town of Williamsport v. Washington County Sanitary District, 247 Md. 326,231 A.2d 40 (1967).
C. Whether a "Moral Obligation" Supports a Public Purpose
A return of the revenues collected pursuant to the transfer tax between the date of its enactment and its demise appears consistent with the voters' rejection of the authorizing ordinance. It is understandable that the Council may feel that it has a "moral obligation" to return the tax revenue collected during the very limited period when the transfer tax was in effect.
The County Attorney has accurately described in his opinion two cases from other states in which appellate courts rejected initiative ordinances that were designed in part to refund taxes levied under prior valid ordinances. In those cases, the courts found that the proposed tax refunds of validly collected taxes would lack a public purpose. See Cityof Yakima v. Huza, 407 P.2d 815 (Wash. 1965) (proposed initiative ordinance that could result in refund of past tax payments would constitute an unconstitutional gift, unless taxing ordinances were themselves invalid or there was some duty on the part of the city to refund the taxes); Utz v. City of Newport, 252 S.W.2d 434 (Ky.Ct.App. 1952) (holding invalid taxpayers' initiative that would have required the return of taxes paid under previously enacted ordinances).
However, payment of a "moral obligation" may satisfy the public purpose requirement. "By the weight of authority, local government payments of moral obligations will not violate . . . constitutional bans upon gifts of public money." Stevenson, Antieau on Local Government § 67.04[10] (2d ed. 2000). See also State v. Giessel, 266 Wis. 547, 64 N.W.2d 421
(1954) (inadvertent repeal of a longstanding exemption established moral obligation that justified tax refund, notwithstanding validity of the repeal); State ex rel. Voelkel v. Thiessen, 232 Wis. 126, 286 N.W. 561
(1939) (upholding return of special assessments validly collected over several years based on moral obligation when others provided service were not assessed).
Given that the Council apparently believes it has a "moral obligation" to refund the amount paid by taxpayers during the short period in which the transfer tax was in effect, the prudent course to achieve the Council's current objective would be to obtain the additional authority from the General Assembly. The preamble of any such bill could recite that it is designed to reflect voters' rejection of the tax in the referendum. The Council's subsequent use of such authority to support an appropriation of funds for a tax refund would presumably be based on the same premise. Thus, two legislative bodies — the General Assembly and the Council — would have determined that reimbursement of those tax payments served a public purpose. A reviewing court would likely defer to those legislative determinations, particularly in these unique circumstances.
However, this conclusion is not free from doubt. Although the Maryland courts generally defer to legislative determinations of public purpose, "the courts have a duty to determine whether the particular use [of public funds] is within the scope of the constitutional power." City ofFrostburg, 215 Md. at 16. The Maryland appellate courts have not had occasion to address the issue whether a "moral obligation" such as illustrated by these circumstances constitutes a public purpose.
 III Conclusion
In our opinion, the County Council currently lacks authority to enact a refund of taxes paid while the County transfer tax was briefly in effect. However, a reasonable argument can be made that, if the General Assembly were to provide the necessary authority, an appropriation by the Council to reimburse those tax payments would serve a public purpose by discharging a "moral obligation" of the County. To pursue such a course, the County must seek enabling authority from the General Assembly that specifically empowers it to refund the taxes.
Very truly yours,
J. Joseph Curran, Jr. Attorney General
William R. Varga Assistant Attorney General
____________________ Robert N. McDonald[*] Chief Counsel Opinions Advice
[*] Assistant Attorney General Richard E. Israel contributed significantly to the preparation of this opinion.
[1] Charter and code home rule counties have authority under the Express Powers Act to impose property taxes. Annotated Code of Maryland, Article 25A, § 5(O); Article 25B, § 13.
[2] There were a number of exemptions to the tax. In authorizing the County to impose the tax, the Legislature exempted transfers that are exempt from the State transfer tax under Annotated Code of Maryland, Tax-Property Article ("TP"), § 13-207. Consistent with TP § 13-407(b), land transfers subject to the agricultural land transfer tax under TP § 13-301 et. seq. were also exempted. WCC § 203-23(c)(3).
In addition to the exemptions provided in the enabling legislation, the Council provided an exemption for the first $50,000 payable toward qualifying owner-occupied real property, consistent with State law. Bill No. 2000-5, Section I, WCC § 203-24(b)(3). The Council also grandfathered property transfers pursuant to sales contracts that were fully executed on or before June 15, 2000. WCC § 203-29.
[3] If, in a particular case, the tax was erroneously or illegally assessed or collected, the taxpayer could seek a refund administratively. See Annotated Code of Maryland, Article 24, § 9-710et seq.; TP § 14-908.
[4] In another context, the Court of Appeals has recognized a distinction between a county's power to tax and its inherent power to appropriate public money. City of Annapolis v. Anne Arundel County,347 Md. 1, 698 A.2d 523 (1997). However, whether the County could invoke that inherent authority to make a refund not otherwise authorized is open to question.
[5] The constitutions of most states prohibit the gift of public funds to private persons. Stevenson, Antieau on Local Government
§ 67.02[2] (2d ed. 2000).
 *Page 59